South Philadelphia Dressed Beef Company, Appellant, *v.* Zoning Board of Adjustment.

Argued November 19, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Samuel Phillips Lavine,* with him *Blanc, Steinberg, Balder & Steinbrook,* for appellant.

*Levy Anderson,* First Deputy City Solicitor, with him *Lenard Wolffe,* Assistant City Solictor, *James L. Stern* and *Leonard L. Ettinger,* Deputy City Solicitors, and *David Berger,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE BELL, January 8, 1958:

The Board of Adjustment and the lower Court refused a variance, and from the order or decree of the lower Court an appeal was taken to this Court. Judge SPORKIN, speaking for the lower Court, said:

"This case is before us on appeal from the refusal of the Zoning Board of Adjustment to issue a permit for the erection of a one-story building on ground situated on the northeast corner of Moyamensing Avenue and McClellan Street, in the City of Philadelphia, better known and numbered as 1809-1813 Moyamensing Avenue, which ground adjoins appellant's present slaughter-house and meat-packing plant. Appellant's slaughter-house is located in a 'general industrial' district, and its operation constitutes a non-conforming use.

"Appellant proposes to use the additional structure as a freezer-warehouse in which it intends to freeze and store meats produced in the slaughter-house. The plot of ground upon which the appellant seeks to erect the additional structure lies in a district zoned 'A Commercial'. Appellant sought a use variance before the Zoning Board of Adjustment because slaughter-houses are permitted only in 'least restricted districts'. In addition to a variance as to use, appellant's application involves a variance with respect to the 'open area' requirements for 'A Commercial' property. Chapter 14-303 (3) (a) of the General Code of Ordinances provides that no more than 80% of the lot shall be occupied. In the instant case appellant proposes to leave only 10% of the area unoccupied.

"Appellant maintains: that the proposed freezer-warehouse is essential to its continued existence; that the freezer-warehouse constitutes an extension of its business which is part of its natural growth and development; that the addition would not produce results contrary to the public interest; and that the 'open area' requirements cannot be applied to the appellant because other properties in the neighborhood do not meet these requirements.

"Testimony was taken before this Court, which supplemented the testimony previously given before the Zoning Board. Appellant presented evidence concerning the manner in which the proposed freezer-warehouse would be operated, if its construction were permitted; the appellant's great need for this facility; its production of meat for the United States Army, for export to foreign governments, and for wholesalers and retailers, including food chains; its estimated volume of production of 17 million pounds annually, of which approximately 6 million pounds are sold as frozen meat; and its present method of trucking its meat to a public freezer where it is frozen, stored, and thereafter returned to appellant's slaughter-house by truck, unloaded, inspected, and finally shipped by truck to appellant's customers.

"Further, appellant, to demonstrate its need, offered evidence to the effect that trucking operations between its plant and the public freezer would be eliminated by the construction of the proposed freezer-warehouse adjacent to its slaughter-house, which would thus permit appellant to compete with other meat producers having adequate freezing and storing facilities in their plants. It is conceded that there has been a substantial growth in the production and sale of frozen meat, and that in this day and age freezing is an important phase of the meat-producing business.

"Appellant's secretary-treasurer and general manager testified that appellant was 'very much in distress' because it did not have a freezer adjacent to its plant. . . .

"The Board found 'that the applicant's business has expanded to such an extent that it is now expanding beyond its industrially zoned area into a commercially zoned area and is completely encircled by an area that is predominantly residential and interspersed with commercial and industrial uses;' that 'there are approximately 40 homes in the 200 block McClellan Street which are on the opposite side of that street from applicant's slaughter-house which backs up to McClellan Street;' that 'there are at least 4 or 5 residences on the same side of McClellan Street where the rear of the new addition is proposed;' that the proposed addition would increase 'already hazardous traffic conditions;' that 'in order to get to the various schools in the neighborhood, children must pass by the applicant's property on both Moyamensing Avenue, Moore Street, and McClellan Street;' and that 'even without the one story addition to be used as a freezer on Moyamensing Avenue, traffic is very hazardous to occupants of permitted uses in the neighborhood due to the parking of automobiles, trucks and cattle trucks awaiting service at the applicant's meat slaughtering plant on Moore Street.'

"The conditions in the area which are embodied in the Board's Findings are amply supported by protestant's testimony in the record. The credibility of this testimony was demonstrated to the three Judges of this Court who visited the area and saw at first-hand the present occupancy and traffic conditions in the vicinity of the property upon which the appellant proposes to erect its building. . . .

"In order to obtain a variance from the terms of a zoning ordinance, a petitioner must prove (1) that the proposed use will not be contrary to the public interest, and (2) that unnecessary hardship will result if it is not granted. Dooling's Windy Hill v. Springfield Township, 371 Pa. 290 (1952); Silverco, Inc. v. Board of Adjustment, 379 Pa. 497, 503-504 (1954); . . . Fagan v. Zoning Board of Adjustment, [389 Pa. 99]. . . .

"We are of the opinion that upon the present state of the record the appellant has not met its burden with respect to these requirements. . . .

"The Board was fully justified . . . in concluding that the proposed use would be contrary to the public interest in that the operation of the contemplated structure would increase 'already hazardous traffic conditions' and endanger the safety of school children using Moyamensing Avenue, Moore Street and McClellan Street in proceeding to and from four elementary schools in the immediate vicinity.

"Appellant sought to counter the natural assumption that the addition of a freezer would increase the traffic hazards and congestion in the area by offering testimony to indicate that its business could not be increased because it was already operating 'at the maximum'. However, appellant's testimony is also to the effect that its business has steadily declined since 1950. Indeed, its claim of hardship relies upon this testimony. . . .

"The appellant has not made out a case by credible evidence. It has not met the required burden of proof. . . . Volpe Appeal, 384 Pa. 378 (1956).

"The case of Blanarik Appeal, 375 Pa. 209 (1953); Peirce Appeal, 384 Pa. 100 (1956); and Mack Zoning Appeal, 384 Pa. 586 (1956), relied upon by the appel-

lant, are clearly distinguishable. . Each one of these cases involved the extension of non-conforming use to property acquired prior to the enactment of the applicable zoning ordinance. In the instant case the variance is sought for property purchased by the appellant subsequent to the enactment of the Philadelphia zoning ordinance.

"In our view of the case extended discussion of the 'area requirements' variance is unnecessary. . . ."

In *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97, the Court said (page 378-379) : "Contrary to appellant's contentions, (a) a person who seeks a variance has the burden of establishing unnecessary hardship, and (b) the test in this case is not whether the board of adjustment committed a manifest abuse of discretion. In this case the lower Court took additional testimony and under such circumstances the test is not whether the board of adjustment, but whether the lower Court, committed a manifest abuse of discretion or an error of law. Where, as here, the Court took additional evidence and may under the Act 'reverse or affirm in whole or in part, the decision appealed from as to it may appear just and proper', it is clear that it is the Court's decision as to what is just and proper,* which must prevail: Dooling's Windy Hill v. Springfield Twp., 371 Pa. 290, 89 A. 2d 505; Rolling Green Golf Club Case, 374 Pa. 450, 97 A. 2d 523; Lord Appeal, 368 Pa. 121, 81 A. 2d 533; Pincus v. Power, 376 Pa. 175, 101 A. 2d 914; Silverco, Inc. v. Zoning Board of Adjustment, 379 Pa. 497, 109 A. 2d 147; Walker v.

---

* "Apart from the clear language of the Act and the aforesaid cases, it would be unfair to convict a board of adjustment of an abuse of discretion when it did not have before it the testimony which was presented in the Court of Common Pleas and which might have caused it to render an entirely different decision." . . .

Zoning Board of Adjustment, 380 Pa. 228, 110 A. 2d 414." See to the same effect: *Garbev Zoning Case*, 385 Pa. 328, 122 A. 2d 682; *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587.

While an examination of the record would indicate that there is considerable merit in appellant's petition, we cannot say that the lower Court—which saw the witnesses and inspected the premises and area in question—committed a manifest abuse of discretion or an error of law.

Order and decree affirmed; costs to be paid by appellant.

Mr. Justice MUSMANNO dissents.