Upper St. Clair Township Grange Zoning Case.

68

Argued March 23, 1959. Before JONES, C.J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Milton W. Lamproplos,* with him *Frank L. Seamans,* and *Eckert, Seamans & Cherin,* for appellant.

*Harland I. Casteel,* with him *Campbell, Casteel & Thomas,* for appellee.

*William S. Livengood, Jr.,* and *Livengood, Braucher & Stroup,* for Pennsylvania State Grange, appellee.

OPINION BY MR. JUSTICE McBRIDE, July 2, 1959:

We have for review an order of the County Court of Allegheny County reversing a decision of the Mount Lebanon Township Board of Adjustment, which refused to grant an occupancy certificate and building

permit to appellee, Upper St. Clair Township Grange No. 2032.

The Grange, in 1957, purchased from the Presbytery of Pittsburgh the premises located at 1331-1345 Cedar Boulevard in Mount Lebanon Township. The premises contained a one story frame church structure which for about 68 years had been occupied by the Beadling Presbyterian Church. Some time after the Grange had acquired the property it applied to the township for a building permit to erect an addition for two toilet rooms and for an occupancy certificate to use the building as a meeting place for the Grange.

The property is located in an R-2 residential district where, under the provisions of the township zoning ordinance,[1] the permitted uses are: one-family

---

[1] "ARTICLE V. 'R2'—ONE-FAMILY DISTRICT    Section 1. *Uses.* In this District the land, buildings, and structures shall be used, and the buildings and structures erected, altered, enlarged, and maintained for the following uses only: 1. Any Use Permitted in 'R1' District.* 2. The following Uses conditional upon approval of location, site plan, and general character of the development by the Board of Township Commissioners.    (a) Institutional Home    (b) General Hospital    3. Required off-street Garage, Parking Area, and Loading Space (see Article XI, Sections 5, 6, and 7).    4. Accessory Uses, buildings, and structures customarily incident to those permitted above and on the same lot with the main use and building."

* "ARTICLE IV. 'R1'—ONE-FAMILY DISTRICT    Section 1. *Uses.* In this District the land, buildings, and structures shall be used, and the buildings and structures erected, altered, enlarged, and maintained only for the following uses: 1. One-family detached dwelling. 2. Farming and gardening, with no retail sales, display, or advertising on the premises. 3. The following uses, conditional upon approval of location, site plan, and general character of the development by the Board of Township Commissioners: (a) Church and additions thereto (including parish house, parsonage, sister-house, and the like when adjoining and under auspices of the church.)    (b) Community center when operated by and within, adjoining, or attached to a church or school.    (c) Institution of Higher Learning.    (d) School."

dwellings, farming, gardening and, subject to township approval of location and site plans, churches, institutional homes, general hospitals, schools, institutions of higher learning, community centers operated in connection with schools and churches, and incidental accessory uses. The use of premises for club or fraternal organization purposes are not permitted in an R-2 residential district. They are permitted in a commercial district.[2]

The township chief inspector refused to issue the building permit and certificate of occupancy on the ground that the proposed use was contrary to the provisions of the township zoning ordinance relating to R-2 residential districts. The Grange appealed to the township board of adjustment and requested a variance. The board, after a full hearing, denied the requested variance. The Grange appealed from the decision of the board of adjustment to the court below which, after a hearing, reversed the board and entered an order granting the variance requested. This appeal followed.

In reviewing the decision of a lower court on appeal to it from a decision of a zoning board of adjustment, the question on appellate review is whether the court below committed a manifest abuse of discretion or an error of law. *Richman v. Zoning Board of Adjustment*, 391 Pa. 254, 137 A. 2d 280; *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587; *Volpe Appeal*, 384 Pa. 374, 121 A. 2d 97.

It is therefore necessary for us to consider the principles of law applicable to the grant of a variance

---

2 "ARTICLE X. 'C'—COMMERCIAL DISTRICT

Section 1. *Uses.* In this District, the land, buildings, and structures shall be used, and the buildings, and structures erected, altered, enlarged, and maintained for the following uses only : . . . 9. Club, fraternal organization; residence club. . . ."

from a zoning ordinance in order to determine if the lower court has complied therewith. A variance may be granted only after the applicant clearly proves two factors: (1) that an unnecessary hardship, unique to the particular property, will result if the variance is not granted; and (2) that the proposed use will not be contrary to the public interest. *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 141 A. 2d 606; *Mack Zoning Appeal,* 384 Pa. 586, 122 A. 2d 48. The party seeking the variance has the burden of proving justification for its grant and he does not do so by proving a mere hardship but must prove an "unnecessary hardship". *South Philadelphia Dressed Beef Company v. Zoning Board of Adjustment,* 391 Pa. 111, 137 A. 2d 270; *Smolow v. Zoning Board of Adjustment,* 391 Pa. 71, 137 A. 2d 251. The record in this case shows that the Grange paid $5,500 for the property; that the church structure cannot reasonably be adapted for dwelling purposes and that the value of the lot alone does not exceed $3,000. It is admitted that if the Grange cannot use the property as a lodge hall or find a church congregation to purchase it, they will suffer a financial loss. Do these facts constitute the "unnecessary hardship" required for the grant of a variance under the decision of this Court? We think not. This Court has repeatedly held that where all that is shown is that the hardship is economic alone, a variance cannot be granted. *Spadaro v. Zoning Board of Adjustment,* 394 Pa. 375, 147 A. 2d 159; *Pincus v. Power,* 376 Pa. 175, 101 A. 2d 914. Also, this hardship was created by the Grange itself. It is admitted by the Grange that they knew that the township had zoning regulations but did not make any investigation to determine whether the property could be used as they contemplated under the applicable zoning ordinance. Where the hardship is, as here, self-inflicted, it is not the func-

tion of the court to grant redress in the form of a variance. The Grange cannot now be heard to complain of the economic hardship involved as the same conditions were present when they purchased the property. *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 141 A. 2d 606; *Edwards Zoning Case,* 392 Pa. 188, 140 A. 2d 110.

The Grange also asserted before the board and the court below that their proposed use of the building is substantially similar to the use of the building as a church and therefore it is entitled to the requested variance as a continuation of a prior nonconforming use. This contention must fall for two reasons. First, the use of these premises by the Beadling Presbyterian Church, for approximately 68 years, was not a nonconforming use. The township's first zoning ordinance, enacted in 1926, authorized the use of land or a building thereon as a church, at locations permitted by the board. The Grange contends that because the board had to give prior approval to such use it is not a permitted use. However, this Court has defined a nonconforming use as the "use of a building or land that does not agree with the regulations of the use district in which it is situated." *Haller Baking Company's Appeal,* 295 Pa. 257, 259, 145 Atl. 77. It is clear from the provisions of the township zoning ordinance, and the continued permitted existence of this church since 1926, that the use of this building as a church was a permitted use and not a nonconforming use.

Second, assuming arguendo that the use of the building as a church was a nonconforming use, the proposed use of the Grange would be a new and decidedly different nonconforming use and certainly one of a lower classification under the zoning ordinance. It must be presumed that the township intended to use the word "church" in the zoning ordinance according to its usual and ordinary meaning. *Shapiro v. Zoning*

*Board of Adjustment,* 377 Pa. 621, 105 A. 2d 299. Black's Law Dictionary defines the word as "an organization for religious purposes or for the public worship of God." The ordinary meaning of the term contemplates a place or edifice consecrated to religious worship, where people join together in some form of public worship. The courts of this state have similarly interpreted the word "church" when it has been employed in other statutes. See *Laymen's Week-end Retreat League v. Butler,* 83 Pa. Superior Ct. 1; *Her-Bell, Inc. Liquor License Case,* 176 Pa. Superior Ct. 206, 107 A. 2d 572. It is admitted by the Grange that the lodge doesn't meet for the purpose of religious worship or for the purpose of teaching religion. Certainly, therefore, it cannot be contended that the contemplated use of the property as a Grange meeting place will be the same as the prior church use. Significantly, the booklet declaring the purposes of the National Grange nowhere makes any claim or assertion that the object or one of the objects of the Grange is a meeting together of the members for the purpose of religious worship. The character and objects of the Grange are set forth in the booklet as follows: "Not only is the Grange the oldest and one of the strongest farm organizations in America, but it is the only farmers' fraternity in the world. Bringing together into compact groups the people of the open country, it directs its energies toward four distinct objects:—(1) A more prosperous agriculture; (2) a more practical education; (3) a better community life; (4) higher ideals of manhood, womanhood and citizenship. . . ."

Thus it is evident from the record and the plain meaning of the word "church" that the use of the property by the Grange is not similar to the use of it by the Beadling Presbyterian Church. On the contrary, the evidence conclusively establishes that the use which

the Grange proposes to make of the building constitutes a club or fraternal organization use. Such a use is not permitted in an R-2 residential district, but is permitted in a commercial district, a lower classification under the township zoning ordinance.

It is clear that under the controlling principles of law there is no support for the conclusion that the Grange be permitted a variance as a continuation of the prior use of the premises as a church.

The third argument advanced by the Grange to the court below that this variance should be granted for the reason that there was a nonconforming use of the building for club purposes previously is also insupportable. There is evidence that during the final 8 or 9 years during which the church operated they allowed an unaffiliated women's club to hold monthly business meetings and an occasional social affair in the church. However, this use of the church by the women's club was an incidental use of the church property which was allowed by the express terms of the ordinance itself and which cannot give rise to nonconforming rights. *Yocom Appeal*, 142 Pa. Superior Ct. 165, 15 A. 2d 687; Wolffe, Pennsylvania Zoning Digest, pp. 25, 271. It is manifest that there is no evidence in the record to support the conclusion that there was a nonconforming use of the property by the church for club purposes.

Appellees failed to prove any unnecessary hardship so as to justify the grant of a variance and, they are not entitled to such variance as the extension of a prior nonconforming use of the property either as a church or a club. The conclusion reached by the court below was not justified by the evidence of record and incorrectly applied the applicable principles of law as set down by this Court.

Accordingly, the order is reversed.

CONCURRING OPINION BY MR. JUSTICE BELL:

I concur in the result, but completely disagree with that part of the majority opinion which states that the Church was a "permitted use" by virtue of the Ordinance of 1926. For approximately 40 years before the ordinance, this Church was a lawful building on the premises upon which it was erected. The fact that in 1926 a zoning ordinance was passed which made a Church in this district a "permitted" use, "subject to Township approval of location and site plans" is not only presently irrelevant but highly prejudicial to the Church. That "permission" could not legally transform and restrict this lawfully existing Church into *only* a "permissive" use, *and thereby prohibit its natural expansion,* increase extension or growth, to which it would be entitled as a matter of *right*—not a matter of "permission" or grace—under principles governing what the cases have inaptly called a "non-conforming" use. See: *Pierce Appeal,* 384 Pa. 100, 105, 119 A. 2d 506; *Gilfillan's Permit,* 291 Pa. 358, 362, 140 A. 136, 138; *Haller Baking Co.'s Appeal,* 295 Pa. 257, 261, 262, 145 A. 77, 79; *Cheswick Borough v. Bechman,* 352 Pa. 79, 82, 42 A. 2d 60, 62; *Schneider v. Zoning Board,* 389 Pa. 593, 133 A. 2d 536; *Yocum Zoning Case,* 393 Pa. 148, 152, 141 A. 2d 601.