## Amplex Manufacturing Co. v. Zoning Board of Adjustment

*John Pemberton Jordan* and *Bank & Minehart*, for plaintiff.

*David Berger* and *Lenard L. Wolffe*, for defendant.

SPORKIN, J., December 14, 1961.—Amplex Manufacturing Company, as lessee[1] of premises 5622-58 Sansom Street[2], in the City of Philadelphia, made application for a zoning permit and/or use registration permit to use the building for the purposes of manufacturing, assembling, layout, warehousing and storage of plastic sheet, letters and signs.[3] The zoning administrator of the Department of Licenses and Inspections on March 2, 1960, refused to grant the permit as applied for.[4]

Subsequently, on April 13, 1960, Amplex Manufacturing Company (hereafter called appellant) appealed to the Zoning Board of Adjustment from the action of the zoning administrator. Following notice to interested parties, the board held a public hearing on May

---

[1] Amplex Manufacturing Company, as such lessee, took possession of the premises in January 1959.

[2] The property (zoned "A" commercial) is a one-story garage-type building, the total area of which is approximately 14,000 square feet.

[3] In the application it was stated that the premises had been used for these same purposes prior to the date of the filing thereof.

[4] Notice of refusal of permit contained the following: "This use is existing on the premises in violation of the zoning ordinance."

10, 1960, at which appellant offered no oral evidence but submitted a general statement, through its counsel; testimony, however, was presented by a number of protestants, residents of the immediate neighborhood; photographs of the interior and exterior of the subject premises were introduced in evidence, together with other pertinent photographs.

The board concluded on May 16, 1960, that appellant failed to present evidence to warrant the granting of a variance,[5] that the refusal of the Department of Licenses and Inspections to grant a permit for the requested use was proper, and accordingly affirmed the action of the zoning administrator. On June 15, 1960, a writ of certiorari was issued, which brought the matter before this court.

From the record it appears that the properties to the east of the premises in question are two-story row dwellings, with a three-story apartment building on the southwest corner of Fifty-sixth and Sansom Streets; the properties to the west consist of a one-story garage, a large private parking lot, and a two-story corner dwelling (southeast corner of Fifty-seventh and Sansom Streets); on the north side of Sansom Street are two-story row dwellings; on the northwest corner of Fifty-sixth and Sansom Streets is a three-story apartment building; the northeast corner of Fifty-seventh and Sansom Streets is a private parking lot of the Bell Telephone Company.

At the hearing before the board, in lieu of testimony, appellant's counsel stated that appellant is engaged in the business of manufacturing signs and employs five workmen in the heating, moulding, shaping, extruding and cutting of plastic letters; the manufacturing

---

[5] It should be noted that the board considered the appeal as a request for a variance. See record of Zoning Board of Adjustment, conclusion of law no. 2.

process involved is to heat plastic pellets, extrude them (forming a mass), press out the substance into a plastic sheet, then cut the sheets into various lengths from which plastic letters are pressed out by a heating process, and finally assembled into a finished sign; all deliveries were made to and from trucks within the confines of the premises; operations took place from 7 a.m. to 8 p.m., and that, although night work had been carried on for some time, the same had been terminated because of complaints; while the sawing process was noisy, efforts were made to minimize this condition.

Protestants' testimony at the hearing was concerned primarily with the following: that large trailer-trucks, loading and unloading in front of the premises, blocked traffic in the street;[6] that appellant operated the business not only during the day but at night as well.[7] One of the witnesses testified that his sleep was interfered with; a number of witnesses testified to unbearable noise.

Photographs of the interior of the property, which were presented, indicate that a considerable portion of the premises is occupied by machinery, cutting tables and other equipment used in connection with the operation of appellant.

---

[6] Notes of testimony, page 12, Zoning Board of Adjustment, testimony of Robert Carpenter, a protestant: "Trucks come in maybe two or three times a week. They block the whole street area off. You can't get through either way. He has the trucks loading, unloading, in and out . . . it is pretty dangerous in the neighborhood with those trucks rolling in and out. They can't get in; the street is completely blocked."

[7] Notes of testimony, same witness, same page: "Also, he stated that they only work from 8: . . . They are working around the clock, have been ever since they were there. And I haven't seen any difference. The saw runs night and day. You can never sleep."

The use of the subject premises for the requested purposes is not permissible in an area zoned "A" commercial, but could properly and lawfully be utilized for said purposes if appellant is entitled to a variance. And, in refusing to grant the variance, the board concluded that appellant had failed to demonstrate any unnecessary hardship if the use were denied, and further concluded that the proposed use would be contrary to the public interest.[8]

Appellant argues that the zoning board was in error in treating this application as a request for a variance, thereby holding appellant to a greater burden of proof than would have been required on an application for a Zoning Board of Adjustment certificate. We find no merit in this contention, since the very language in the appeal petition by appellant to the Zoning Board of

---

[8] Zoning Board of Adjustment, record, conclusions of law:

"3. That the applicant has shown no hardship as defined by Section 5-1006(1) (C), Philadelphia Home Rule Charter, in that:

"(a) At the time when lessee rented this property he had or should have had full knowledge of the zoning status thereof. Devereux Foundation, Inc. Zoning Case, 351 Pa. 478 (1945).

"(b) That if the only actual hardship which appears is economic hardship, which in itself is insufficient to warrant the granting of a variance. Pincus v. Power, 376 Pa. 175 (1954).

"6. That the proposed use would be contrary to the public interest in that proposed use would be offensive to the neighbors, and particularly to the residences of the 5600 block Sansom Street because of the noise.

"7. That the proposed use would be contrary to the public interest in that proposed use would create an undue traffic hazard.

"8. That the proposed use would constitute an industrial inroad upon this residential and commercial district.

"9. That the health, morals, safety and general welfare of the immediate neighborhood would be adversely affected if a Zoning Board of Adjustment Certificate was granted to applicant for manufacturing, assembling, lay-out, warehousing, and storage of plastic sheets, letters and signs."

Adjustment indicates a request for a variance,[9] and the board had the duty, as well as the right, to consider the appeal as a request for a variance.

However, notwithstanding the express language contained in the appeal petition, at the public hearing appellant proceeded on a different theory to support its appeal, as is reflected by counsel's statement to the following effect: "This application is for light manufacturing as an accessory use to sign manufacturing, which is a craftsman's trade, and is permitted with the approval of this Board in an 'A'-Commercial area." [10] Counsel now urges upon this court, in his brief and argument, that appellant was not seeking a variance but rather was entitled to the use certificate, because the use was a "Craftsmen's" trade, permissible in a district zoned "A" commercial, under section 14-303 (1) (i) of the *Code of General Ordinances of* The City of Philadelphia, Zoning and Planning, or, in the alternative, permissible in the district under section 14-303 (2) (h) of the code which provides that the Zoning Board of Adjustment may grant a certificate for "Light manufacturing as an accessory use . . . but not exceeding 10 percent of the total floor area occupied by the permitted use."

Considering the nature of appellant's business, it is clear that it is engaged in the manufacturing of signs. Even though modern development in the field of plastics, requiring the moulding, extruding, pressing and shaping of this synthetic material, may be termed an improvement in technique, it is, nevertheless, fundamentally a manufacturing enterprise and cannot pos-

---

[9] In its appeal petition to Zoning Board of Adjustment appellant stated: "Hardship and economic conditions involved require any *variance* or use permit." as one of the "objections to the refusal". (Italics supplied.)

[10] Notes of testimony, page 2, Zoning Board of Adjustment.

sibly come within the classification of a craftsman's trade.

Webster's International Dictionary, 2d ed., defines a craftsman as "One who practices some trade or manual occupation; an artificer or artisan," and craftwork is defined as "Practical work at a manual art." Black's Law Dictionary, 4th ed., defines a craft as "A trade or occupation of the sort requiring skill and training, particularly manual skill combined with a knowledge of the principles of the art."

We can readily place within this category a jewelry repair man, a silversmith and similarly skilled manual artisans, but there is nothing in the record before us to indicate that the processes of converting plastic pellets into letters to be placed on signs can in any way be construed as the practicing of a craftsman's trade, within the clear definitions of the term.

Furthermore, even if the business does not constitute a craft, appellant argues that it is entitled to a certificate under section 14-303(2)(h) for "light manufacturing as an accessory use." Appellant endeavored to establish that the area in the premises used for the processing of the plastic material was limited to less than 10 percent of the total floor area. The fallacy of this argument is that the operation for which appellant seeks the certificate is not "light manufacturing as an accessory use." By its own admission, appellant is engaged in sign manufacturing and the processing of the plastic material is, of itself, not incidental thereto but is the primary stage in the fabrication of the signs. There is nothing accessory in this processing. ' " . . . there is a distinction between a use which is incidental to the owner's business, and a use which is the owner's primary concern." ' Williams Appeal, 174 Pa. Superior Ct. 570, 574 (1954).

Since the only business conducted by appellant on the

premises is the manufacturing of signs, the use of the premises as to any stage of the manufacture is ". . . a *primary*, and not an accessory, use": Silver v. Zoning Board of Adjustment, 381 Pa. 41, 44 (1955); Cf. Landau Advertising Co., Inc. v. Zoning Board of Adjustment, 387 Pa. 552 (1957).

We, therefore, conclude that appellant is not entitled to a certificate for an accessory use for light manufacturing in a commercial district. Furthermore, section 14-301, of the Zoning and Planning Code specifically provides: "(1) No trade, industry, or use that is noxious or offensive by reason of the emission of odor, dust, smoke, gas, or *noise* is allowed in any commercial district." (Italics supplied)

However, if any consideration could be given to appellant's petition, it would have to be on the basis of a variance, and the zoning board properly considered the application in such light.

In order to obtain a variance from the terms of a zoning ordinance an applicant must demonstrate (1) that unnecessary hardship will result if the use is denied, and (2) that the proposed use will not be contrary to the public interest: South Philadelphia Dressed Beef Co., Inc. v. Zoning Board of Adjustment, 391 Pa. 111 (1958); Richman v. Zoning Board of Adjustment, 391 Pa. 254 (1958); Volpe Appeal, 384 Pa. 374 (1956); Fagan v. Zoning Board of Adjustment, 389 Pa. 99 (1957); O'Neill v. Phila. Zoning Board of Adjustment, 384 Pa. 379 (1956); Silverco., Inc. v. Zoning Board of Adjustment, 379 Pa. 497, 503-504 (1954). The unnecessary hardship must be unique or peculiar to the property for which the variance is sought, as distinguished from a hardship arising from the impact of the zoning regulations on the entire district: Smolow v. Zoning Board of Adjustment, 391 Pa. 71 (1958); Michener Appeal, 382 Pa. 401, 406

(1955) ; English v. Zoning Board of Adjustment, 395 Pa. 118, 120 (1959).

Having heard the testimony, the board found, and properly so, that the proposed use would be contrary to the public interest,[11] and that appellant had failed to meet its burden with respect to establishing unnecessary hardship.

There was ample evidence before the zoning board to justify its denial of a variance. There was testimony from immediately adjoining residents as to noise, parking difficulty, and traffic congestion occasioned by the operation of appellant's business. These are proper elements to be considered by the board in determining whether or not to grant a variance: Sears, Roebuck & Co. v. Power, 390 Pa. 206, 211 (1957).

Appellant's contention that the noise has abated in recent months does not alter the fact that noise-producing machinery is in use, and that the granting of a variance will permit the expansion of these operations.

Since the scope of review in the instant case is as on certiorari, it is limited to our determining whether or not the Zoning Board of Adjustment abused its discretion in refusing to grant the variance requested, or committed positive error of law: Catholic Cemeteries Association Zoning Case, 379 Pa. 516 (1954). It is likewise clear that a court of common pleas cannot substitute its judgment for that of the board on questions of fact: Rowland, Sr., v. Zoning Board of Adjustment, 2 D. & C. 2d 734 (1954).

The record establishes that the Zoning Board of Adjustment, in refusing to grant the variance in the instant case, did not act in an arbitrary, capricious or unreasonable manner, or in clear violation of positive law.

---

[11] See footnote 8, supra.

Accordingly, we have dismissed appellant's appeal and have affirmed the decision of the Zoning Board of Adjustment.