McClure Appeal.

Argued May 1, 1964. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph Sharfsin,* with him *R. Paul Lessy,* for appellants.

*John B. H. Carter,* with him *Holbrook M. Bunting, Jr.,* and *Edward W. Madeira, Jr.,* for appellees.

OPINION BY MR. JUSTICE JONES, September 29, 1964:

In December 1960 the Fidelity-Philadelphia Trust Company (Fidelity), applied to the building inspector of Radnor Township (Township), in Delaware County for a permit to erect a branch bank building, with accessory outside drive-in, parking and other facilities, upon a tract of land located at the northwest corner of Lancaster and Airdale Avenue in Rosemont.[1] Under the township zoning ordinance this tract of land was in a residential area. Upon denial of the permit,[2] Fi-

---

[1] At the time the permit was requested, Fidelity had a sales agreement to purchase 37,654 square feet of this land, which purchase was made in January 1961. During the course of these proceedings, Fidelity purchased an additional tract adjoining its original purchase on the west. In all,—with this additional purchase of 9300 square feet—Fidelity became the owner of more than an acre of this corner land.

[2] The permit was denied because (1) a business building was not a permitted use, (2) the proposed building would violate front and side yard setback provisions of the zoning ordinance and (3) the proposed signs were not permitted under the ordinance and, as proposed, violated the front yard set back provisions.

delity requested the board of adjustment of the township (Board), to grant variances under the zoning ordinance. The Board refused and the Court of Common Pleas of Delaware County sustained the Board. Fidelity excepted to the court's action and, in June 1962, the court, stating the "only testimony presented before the [Board] was in the form of statements of counsel for [Fidelity] and no witnesses were called to testify on behalf of [Fidelity]",[3] vacated its previous order and remanded the matter to the Board "for the taking of admissible, competent and relevant testimony".

The Board then held several hearings at which considerable testimony was taken on behalf of Fidelity as well as protesting residents in the vicinity and, after such hearings, the Board granted the variances and the court sustained the Board. From the court's order this appeal has been taken.

In determining this appeal, certain principles, well settled in this area of the law, must guide us. First, since the court below took no additional testimony, our scope of review is to determine whether the Board committed a manifest abuse of discretion or an error of law: *Brennen v. Zoning Bd. of Adjustment,* 409 Pa. 376, 379, 187 A. 2d 180; *Crafton Borough Appeal,* 409 Pa. 82, 85, 86, 185 A. 2d 533. Second, the Board's power to grant a variance from a zoning ordinance "is to be sparingly exercised and only under peculiar and exceptional circumstances": *Sgarlat v. Kingston Borough Bd. of Adjustment,* 407 Pa. 324, 330, 180 A. 2d 769; *Cresko Zoning Case,* 400 Pa. 467, 471, 162 A. 2d

---

[3] At the initial hearing before the Board, Fidelity presented in evidence certain exhibits,—the sales agreement, tentative building sketches, site photographs, an engineer survey, etc.—, written opinions of three realtors as to the use of the land for residential purposes and a letter from a Pennsylvania Department of Highways representative recommending that ingress to and egress from the land be from County Line Road and not from Lancaster Avenue as Fidelity originally proposed.

219. Third, in order "to obtain a variance the law is well settled that a *petitioner must prove* (1) the variance will not be contrary to the public interest; and (2) *unnecessary* hardship will result if it is not granted": *Silverco, Inc. v. Zoning Bd. of Adjustment,* 379 Pa. 497, 503, 109 A. 2d 147, and cases therein cited. Fourth, a variance should be granted, assuming it is not contrary to the public interest, only "where the property involved is subjected to an unnecessary hardship unique or peculiar to itself, and not to general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance": *Magrann v. Zoning Bd. of Adjustment,* 404 Pa. 198, 200, 170 A. 2d 553. Fifth, a rezoning cannot be accomplished under the guise of a variance: *Richman v. Zoning Bd. of Adjustment,* 391 Pa. 254, 259, 137 A. 2d 280. Lastly, one who seeks a variance cannot be heard to complain of a hardship involved when the same condition was present to his knowledge when he purchased the property: *Upper St. Clair Twp. Grange Zoning Case,* 397 Pa. 67, 71, 72, 152 A. 2d 768; *Cresko Zoning Case,* supra, 472.

The land upon which Fidelity desires to construct a branch bank has been for many years zoned "R-4", i.e., a residential area in which the land uses are single family dwellings, a municipal building and a telephone control office. *If allowed by the Board as special exceptions,* other uses in an "R-4" area are agriculture, a nursery, a greenhouse, the keeping and raising of livestock, a club, a fraternity house, a lodge, a hospital or sanitarium as well as religious, educational or philanthropic purposes. Moreover, certain so-called "accessory uses" are permitted, *by way of special exceptions,* such as a "professional office or studio" of members of certain specified professions, provided that such uses are carried on "by members of the family in rooms which are located in a dwelling in which the petitioner resides".

The property in question, irregular in shape, was described by the court below as practically "an island surrounded by four streets, Lancaster Avenue on the south, County Line Road on the north, Airdale Avenue on the east and Converse Avenue on the west".[4] County Line Road—the boundary between Radnor and Lower Merion Township—is entirely residential in character and well-kept and well-maintained single family dwellings occupy both sides of County Line Road in the vicinity of the property in question. While two blocks to the north of County Line Road is the Rosemont Station of the Pennsylvania Railroad and a block away are a diner and two gasoline stations, our examination of the record leads us to agree with the court below that the use of the property as a branch bank "would constitute the first commercial inroad into this particular section of Radnor Township."

In its initial rejection of the requested variance, the Board's findings, inter alia, were (a) the possible use of the land as a residence comparable to those in the neighborhood was "practically nil" and that the restriction of this land to residential purposes constituted a "hardship", (b) that Fidelity's knowledge of the zoning restriction of use of this land when it was purchased was *"irrelevant"*, (c) that the use of the land sought by Fidelity is not the only "alternative solution" and (d) because of the "intensity of proposed commercialism, increased traffic in the adjoining residential side street [County Line Road], and the risk of undue business use deteriorating an otherwise first quality residential neighborhood", the location of the

[4] In approximately 1950, the Township vacated Converse Avenue, thus Converse Avenue is no longer a highway. From the record it appears that, although the paving remains, Converse Avenue is utilized only by commuters who park cars in the area.

branch bank on this land would not be in the public interest.[5]

In granting the variance, the Board while, in the main, reiterating its previous findings, concluded the location of the branch bank was in the public interest, relying in large measure on a traffic survey of a Mr. Raber of the Pennsylvania Department of Highways.[6]

An analysis of both the opinions of the Board and the court is of interest: (a) that which *controlled* the shift in positions was the testimony of the Highway Department as to the traffic conditions on County Line Road; (b) the fact that Fidelity *knew* when it purchased this land of the restricted use thereof under the zoning ordinance[7] was considered immaterial; (c) little or no consideration was given to any other factor than traffic conditions in determining the impact of the location of this branch bank on the area; (d) even assuming the land was impractical for use for residential purposes, no consideration was given to its use for alternative purposes within the zoning ordinance.

The Board on two occasions concluded the land was not suitable for residential use.[8]  There was evidence to support such finding and conclusion; therefore, we

---

[5] In upholding the Board, the court, noting the noise and vibration generated by traffic on the adjoining highways opined that a branch bank "would generate additional traffic, noise and vibration".  While the court believed the use of the land for residential purposes was "impractical", it agreed with the Board the location of a branch bank would be in the public interest.

[6] In affirming the Board, the court also felt the branch bank was in the public interest and that it would be "suitable" and "ideal" at this location.

[7] H. E. Danner, Fidelity's vice-president in charge of price administration, testified that, prior to the purchase of the land, he investigated the zoning situation and he *knew* Fidelity would have to seek a change in the zoning restriction.

[8] Reading the record one cannot help receive the impression this land was *priced* out of reach of those who would use the land for residential purposes.

cannot conclude that in this respect the Board abused its discretion or committed error. Such finding does not, however, command the grant of a variance, even if the public interest would not thereby be adversely affected. As a general rule, if the land, as a practical matter, cannot be utilized for residential purposes, then the land should be rezoned by an appeal to the legislative body. Such rezoning cannot and must not be accomplished under the guise of a variance.

Assuming, arguendo, this land cannot be, as a practical matter, used for residential purposes and that the requirement of such use constitutes a "hardship", can Fidelity lay claim to such "hardship" as an "unnecessary hardship" and on the basis of such "hardship" obtain a variance? Examining the record before this Board it is clear beyond question that, when Fidelity purchased this land, the land was zoned residential, that such fact was known to Fidelity and that, despite such knowledge and with its eyes open, Fidelity purchased this land. Under such circumstances Fidelity is in no position to claim an "unnecessary hardship". Our case law on this subject could not be *more* clear.[9] The Board stated: "The fact that [Fidelity] purchased the property when it already was in this predicament is irrelevant." The Board, in so finding, completely ignored the law and, in so doing, committed an error of law for which its decision must be reversed. Fidelity's knowledge of the zoning restriction of the use of this land when it purchased it bars effectively the requested variance.

---

[9] *Dishler v. Zoning Bd. of Adjustment*, 414 Pa. 244, 246, 199 A. 2d 418 (1964) ; *Cooper v. Board of Adjustment*, 412 Pa. 429, 434, 195 A. 2d 101 (1963) ; *Andress v. Zoning Bd. of Adjustment*, 410 Pa. 77, 88, 188 A. 2d 709 (1963) ; *Crafton Borough Appeal*, 409 Pa. 82, 89, 185 A. 2d 533 (1962) ; *Upper St. Clair Twp. Grange Zoning Case*, 397 Pa. 67, 71, 72, 152 A. 2d 768 (1959) ; *Cresko Zoning Case*, 400 Pa. 467, 162 A. 2d 219 (1960).

292

That which this Court said in *Upper St. Clair Twp. Grange Zoning Case,* supra, 71, 72, is apropos: "Where the hardship is, as here, self-inflicted, it is not the function of the court to grant redress in the form of a variance. The [applicant for a variance] cannot now be heard to complain of the economic hardship involved as the same conditions were present when [it] purchased the property. [citing authorities]."

In view of the conclusion reached, the order must be reversed and we need not consider other contentions raised by appellants.

Order reversed.