# Gutkowski v. Phoenixville Borough Zoning Board

*C. Richard Morton*, for appellant.

*William Massinger* and *Gawthrop & Greenwood*, for appellee.

RILEY, J., January 6, 1966.—The issue before us is raised upon an appeal from a decision of the Board of Adjustment of the Borough of Phoenixville overruling a certificate of the zoning officer permitting the use of a certain premises within the borough as a residence and funeral parlor. The specific issue for determination is the interpretation of the term "profession", as employed in the borough ordinance regulating "A" residence districts.

The pertinent provisions of the zoning ordinance read as follows:

"Section 11. 'A' Residence Districts. In an 'A' Residence District, land may be used and buildings or structures may be erected, altered or used for the following and no other:

"Permitted Uses

"1. One-family detached dwelling.

"2. Church, chapel or other place of worship.

"3. School or college, including fraternity house,

sorority house or dormitory for faculty or students, if located on the same unit of property upon which the school or college buildings are situated.

"4. Apartment hotels, hotels.

"5. Homes, hospitals and sanitariums, when authorized as a special exception by the Board of Adjustment in accordance with Section 40 (E).

"6. Community house, park or playground (not operated as a business or primarily for profit).

"7. Farm, noncommercial truck garden, greenhouse or nursery.

"8. Telephone exchange building.

"9. Library.

"10. Accessory uses, incident to any of the principal uses above listed, and not involving the conduct of a business.

"11. Apartment buildings. . . .

"Section 14. Accessory Uses, Residence Districts. In any residence district, accessory uses shall be uses customarily incident to the principal uses listed as permitted. They shall be understood to include, among other things:

"1. An office or studio, such as that of a physician, dentist, musician, artist, teacher, architect, lawyer or other professional person when located within or directly attached to his or her dwelling, which is used primarily as a dwelling; and home occupations such as dressmaking or millinery engaged in by persons only of the immediate family and within their own dwellings.

"2. The renting of rooms or lodgings or the serving of meals for compensation, to not more than four (4) persons.

". . .

"8. The use of and/or the construction of buildings within B or C Residence Districts only, which are to be used primarily as an office or offices by either one

or more of the following professional persons, provided such buildings proposed to be constructed or used conforms to the Schedule of Height and Area Limitations, as set forth for that particular residence district:

"(a). Medical Doctors

"(b). Dentists

"(c). Architects

"(d). Public accountants or certified public accountants.

"(e). Attorneys-at-law

"(f). Civil, industrial, chemical, electrical and mechanical engineers.

"(g). Other professions requiring formalized education at a recognized college or university and issuance of a license by the Commonwealth of Pennsylvania".

There are three classifications of "Residential" districts established in the ordinance: A, B and C residential. In "A" districts, a lot size of 6,000 square feet, 30 foot depth of front yard, aggregate side yards of 20 feet and a rear yard of 25 feet are required. Uses are restricted to single homes, churches, schools, colleges, apartments, hotels, homes, hospitals, sanitariums, farms, greenhouses, telephone exchange buildings, libraries and accessory uses "incident to any of the principal uses and not involving the conduct of a business". In "B" residence districts, the ordinance requires 5,000 square feet in area with proportionate reductions in yard depths and permits double and two-family dwellings, museums and fraternal organizations as additional uses of property. In "C" Residential Districts", a minimum of 3,200 square feet of lot area, with like proportionate reduction in yard depths, is required, and the ordinance permits row dwellings, electric substations and gas regulating stations in addition to the uses permitted in "A" and "B" districts.

Appellant is the owner of a house located in an "A"

district, situate at the apex of a triangular intersection fronting on Nutt Road and on Starr Street. He applied to the zoning administrative officer of the borough for a certificate of occupancy for the property as a home and funeral parlor, with the stated intent that he, his wife, two children and mother-in-law reside there, using the first floor living room as a funeral parlor and the basement for casket display and embalming. He has been a licensed funeral operator in Pennsylvania since 1949, and at the time of the application, was operating a funeral home on Main Street in Phoenixville, conducting 5 funerals in 1965 and 18 in 1964. The zoning administrator issued the requested certificate of occupancy, and James A. Neary appealed the issuance to the board of adjustment. James A. Neary is the next door neighbor on Nutt Road. The board of adjustment reversed the action of the administrative officer, from which reversal appellant has appealed to this court.

The board restricted its findings solely to the determination of existing regulations and its interpretation of the meaning of the several applicable sections of the ordinance. The conclusion of the board was that a funeral director is not one of the "professions" within the meaning of the term as employed in section 14 of the ordinance. A reading of the "Findings" of the board leads to some perplexity, in that the board refers to articles, sections and subsections of the ordinance that do not correspond to the zoning ordinance entered as exhibit A-1A. However, as the factual background, the location and intended use of the premises and appellant's qualifications as a funeral director, as well as the terms of the pertinent section of the zoning law to be construed, are not disputed, we deem it unnecessary to create the hardship of remanding the decision of the board for further findings and clarification. It is conceded that section 14, as set forth on pages 342-43 of

exhibit A-1A, is the controlling section of the zoning ordinance and that subsection 8 (page 343) was added in 1950 or at some later date than the other subsections of section 14. The sole question before us is whether a funeral director operating from a house used as a home for himself and family is an "Accessory" use in "A" residential districts within the meaning of the terms of section 14 of the ordinance. The board of adjustment has determined that such use was not contemplated in the language of the ordinance and, no testimony having been taken before us, the legal question is whether the board committed an error of law in its construction of the ordinance: Mulac Appeal, 418 Pa. 207; McClure Appeal, 415 Pa. 285.

The primary object in construing words employed in any ordinance is to ascertain the intent of the legislative body using the particular term: Bonasi v. Haverford Township Board of Adjustment, 382 Pa. 307. A municipality may designate by definition any meaning it wishes to be accorded particular words or phrases used in a given ordinance, even though the meaning differs from that ordinarily conveyed by the term or phrase: Sterling v. Philadelphia, 378 Pa. 538. However, in the absence of a specific definition given in an ordinance, words and phrases must be accorded the generally accepted meaning at the time used: Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533. In Mayer v. Hemphill, 411 Pa. 1, at page 14, Chief Justice Bell states the general rule of statutory construction: "We note that the word 'candidate' is not defined in the Philadelphia Home Rule Charter. Candidate is not a word of art. 'Candidate' must, therefore, be construed in the light of its common, ordinary and generally accepted meaning". In construing a zoning ordinance, we must add an additional rule of construction, namely, that the words of restriction upon the use of property, being in derogation of common law, must

receive a strict construction in favor of the property owner and, conversely, words of allowance receive the broadest construction. As stated by Justice Musmanno in Gilden Appeal, 406 Pa. 484, at page 492: "In the absence of any definition to the contrary in the zoning ordinance, the term 'educational institution' as used in the ordinance must be presumed to have been employed in its broadest sense, while the word 'sanitarium', being a prohibited use, must be strictly construed, since restrictions on a property owner's right to free use of his property must be strictly construed *and all doubts resolved in his favor*". (Italics supplied.) In like vein, Justice Eagen set forth the rule in Fidler v. Zoning Board of Adjustment, 408 Pa. 260, at page 265: "It is fundamental that restrictions imposed by zoning ordinances are in derogation of the common law and must be strictly construed: Rolling Green Golf Case, 374 Pa. 450; . . . Lord Appeal, 368 Pa. 121; . . . and, Medinger Appeal, 377 Pa. 217 . . . Such restrictions must not be so construed as to fetter the use of the land by implication. The permissive widest use of land is the rule and not the exception, unless specifically restrained in a valid and reasonable exercise of police power". At page 264, Justice Eagen further states: "Since the township ordinance failed to define 'agriculture' or 'agricultural,' the term must be interpreted and applied in accordance with its usual and generally accepted meaning: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533; . . . Commonwealth Tr. Co. Mtg. Invest. Fund Case, 357 Pa. 349, 54 A. 2d 649". Again, in Peterson v. Zoning Board of Adjustment, 412 Pa. 582, at page 585, Justice Musmanno states the rule of construction as applied to zoning ordinances: "In addition, zoning regulations must be construed strictly, since they impose restrictions on the free use of property. . . ."

We find no appellate court construction in this state of the word "profession" in a zoning ordinance in its

relation to "funeral directors". Lower courts who have encountered the issue appear divided. In Hampton v. Norristown Board of Adjustment, 72 D. & C. 270 (1950), the Montgomery County court held "undertaking" to be a "business" and not a "profession". Similarly, in Hewlett v. Zoning Board of Adjustment, 8 D. & C. 2d 75, Philadelphia County determined that "undertaker" was not intended to be included in the term "Office of physician, dentist or other professional person. . . ." To the contrary are the decisions of Dauphin County in Paxtang Borough Board of Adjustment v. Arnold, 8 D. & C. 2d 98; of Lehigh County in Weir v. Zoning Board of Adjustment, 13 D. & C. 2d 225, and of Bucks County in Leaver v. Buckingham Township Board of Adjustment, 10 D. & C. 2d 333. As might be expected, each of the parties before us urges the respective decisions tending in his favor upon us and respectively attempts to distinguish or coordinate the language employed in the several ordinances with that of the Borough of Phoenixville. The opinions refer to "classic meaning" of "professional", "broad meaning" and "strict meaning". They refer to undertaking as a desirable, acceptable or obnoxious use of property in residential areas. Each refers to the particular language of the ordinance in question in support of the ultimate construction determined to be the "intent" of the framers of the ordinance.

The Phoenixville ordinance does not specifically define the word "profession" or "professional" as employed in the ordinance. Applying the well established rules of construction above referred to, the ordinary and generally accepted meaning of the term must be adopted and, in the issue before us, "professional use", being a permissive use in a zoning ordinance, must be accorded its broadest meaning in favor of the property owner, in the absence of any clear indication of a contrary intent.

In construing statutes or ordinances in an effort to

give effect to the intent in the mind of the legislators, there is a tendency to look to various parts of the ordinance and bring forth arguments pro or con a particular interpretation according to the presence or absence of the particular word or other phrases. Such review of other sections of an ordinance may at times provide a clear indication of what was in the minds of the legislators in the use of a particular term other than the normal and accepted meaning. It has been urged upon us that we construe "other professional person" in a narrow or classic sense as employed in section 14 (1), because of different wording being used in section 14 (8) adopted some time later. We are not impressed with the argument. In the first place, it is obvious that the framers used the term in section 14 (1) in a far broader connotation than the mere classic professions, as mentioned by Judge Kun in the Hewlett case to be doctors, lawyers and theologians. The ordinance before us goes well beyond the classic connotation of the term in its own specification of teachers, architects and musicians, as well as lawyers, doctors and dentists, and then adds "other professional" person, obviously intending to include additional occupations above and beyond those designated. The fact that in section 14 (8) the framers undertook to define "professions" as those "requiring a formalized education at a recognized college or university and issuance of a license by the Commonwealth" is no clear indication that the framers intended to limit professions in subsection (1) to a more limited scope. A reading of subsection 8 clearly indicates that the prime purpose of differentiation between professional use of land in "A" districts and "B" and "C" residence districts was that in the former, they were limited to buildings primarily used as a residence, while in the latter, land could be used and buildings constructed solely for the professional uses

indicated. When one begins to speculate as to what is in another's mind by words used or not used in other parts of an act or ordinance, many specious arguments become available. Thus, it might be argued that since section 14 (1) specifically mentions doctors, lawyers, dentists, musicians and artists, and repeats doctors and dentists, but omits artists and musicians, the latter were not intended to be permitted uses in B and C districts, although allowable in A districts. We do not believe section 14 (8) bore any relation in the minds of the framers to differentiation of classes of "professions" or was intended to widen or narrow the scope. There is certainly no clear indication by the language or its absence of different intents in the use of the same word in the two sections.

The basic fact is that the framers of the ordinance used the word "professions" without any specific definition. We must presume they were aware of and subject to the norms by which the words they employed in the ordinance would be construed. As above pointed out, this would be in as broad a sense as possible in favor of the property owner. Had the framers any contrary intent, it was incumbent upon them to specifically define the term otherwise.

It has been urged that we should consider the desirability of an undertaking establishment in an "A" residential district. While comments have been made in other decisions as to desirability, undesirability or acceptability of the use in question, we do not intend to speculate as to whether the framers desired such use or not. The criterion is not what this court or any other person or body would desire or believes the individual framers might or might not desire, but the sole criterion is what the meaning of the words in fact employed conveys. In this regard, however, we might say in passing that the relatively slight difference in standards between "A", "B" and "C" residential dis-

tricts hardly indicates by the classifications themselves any intent to differentiate substantially in the uses of the properties within each class. We credit no weight to the argument that the "A" residence districts are an ultra or exclusive area of the borough, not only for the reasons above stated as to slight variance, but also from the other permissive uses as apartments, hospitals, sanitariums, telephone exchanges, fraternities and sororities and then accessory uses. What we might prefer, or what we surmise council or adjacent residents might prefer, in the "A" residential district is immaterial. We might also add that it is a commonly known fact that funeral parlors are frequently located in residential areas, particularly in suburban communities.

The final question to be resolved is whether the occupation of "funeral director" is embraced in the broad meaning of the word "profession", as that term was commonly accepted in 1945 when the ordinance in question was adopted. Judge Kun, in the Hewlitt case, supra, points out the diversity of meaning with which the word "profession" is employed: "An examination of various dictionary definitions of 'profession' and 'professional' reveals that these terms may be employed in many different senses. See also Howarth v. Gilman, 365 Pa. 50, 56-57. In a broad sense these terms apply to all persons who profess to have special knowledge and who deal primarily in services, as distinguished from occupations of a mercantile or manual nature. In the narrow sense these terms refer to what were once considered the only professions and are now frequently referred to as the 'learned professions', namely, theology, medicine and law". In United States v. Laws, 163 U. S. 258, we find the subject treated as follows: "In the Century Dictionary the definition of the word 'profession' is given, among others, as 'A vocation in which a professed knowledge

of some department of science or learning is used by its practical application to the affairs of others, either in advising, guiding, or teaching them, or in serving their interests or welfare in the practice of an art founded on it. Formerly, theology, law, and medicine were specifically known as *the professions;* but as the applications of science and learning are extended to other departments of affairs, other vocations also receive the name. The word implies professed attainments in special knowledge as distinguished from mere skill. A practical dealing with affairs as distinguished from mere study or investigation; and an application of such knowledge to uses for others as a vocation, as distinguished from its pursuit for its own purposes' ". The inherent vagueness in the concept is amply evident in any attempted definition or discussion of the term leading to conflicting opinions as to the callings within its embrace. It seems apparent, however, that in the broad sense, as we must interpret it, the term "profession" today includes a multitude of vocations beyond the classic pursuits of law, medicine and theology.

Applying the modern concept of profession to the avocation of funeral director, Judge Satterthwaite, in the Leaver case, supra, states: "We believe that the highly specialized functions of a funeral director can reasonably be said to be within this broad definition in view of the comprehensive training, knowledge and experience involved, under the licensing requirements not only of the present Act of 1951, . . . but also under prior legislation, as well as the peculiarly intimate, personal and confidential nature of the indispensable services performed". We coincide with this conclusion and believe that funeral directing is well within the bounds of "a profession" in its broad, modern acceptance.

It is true that every profession entails a "business"

aspect. One who pursues the legal profession and ignores the "business" factors involved soon discovers the dual nature of the vocation or seeks a livelihood elsewhere. It is common knowledge that the vast majority of funeral directors are men of high standards and bearing, wholly devoted to rendering service to their clients and patrons, and do perform not only an essential but a highly skilled service to their clients and their community. The knowledge, art and competence required of the modern funeral director, the legislative requirements for licensure, schooling, specialized instruction and training of a funeral director (see 63 PS §479.1, et seq.), combined with his stature and standing in society today, amply qualifies him to be designated a "professional" man, perhaps not in the classical sense, but certainly in the sense in which the term is generally accepted in this era.

In the ordinance before us, the council employed the term "profession" without specific definition. Under the rules of statutory construction, particularly those applicable to a zoning ordinance, we must render its interpretation as broadly as possible and in its commonly accepted sense. Had the councilmen intended any more limited construction, they might readily have so indicated by special definition. They have employed a phrase with obviously wide connotation and are bound by its broad construction. We believe the art, skill, required education and experience as well as the demeanor and service incident to the modern undertaker fully qualifies that occupation to be classified as a profession in the broad sense. Reasonable men may well differ and argue with merit and breadth and scope of the term "professional". This the framers and enacting council must well have known in employing that phraseology. If the framers of legislation choose terms of divergent or debatable signification in a zoning ordinance, both they and the courts are bound to

the broadest of the variants in favor of the property owner. Hence, we find that the Board of Adjustment of the Borough of Phoenixville did commit an error of law in overruling the granting of the occupancy certificate to appellant for the conduct of a funeral parlor in conjunction with his family residence at 2 Nutt Road in Phoenixville.

The decision of the board of adjustment is hereby reversed.