**ENF FAMILY PARTNERSHIP,**
Appellant

v.

**ERIE COUNTY BOARD
OF ASSESSMENT
APPEALS,**

v.

**Millcreek Township School District.**

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2004.
Decided Nov. 12, 2004.

Dawn M. Rooth and John J. Mehler, Erie, for appellant.

Michael J. Visnosky, Erie, for appellee, Millcreek Township School District.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

ENF Family Partnership (ENF) appeals from the February 17, 2004, order of the Erie County Court of Common Pleas (trial court), which affirmed a decision of the Erie County Board of Assessment (Board) holding that, for tax assessment purposes, an appraiser may consider the highest and best use of property as commercial use where it is reasonable to believe that the property could be re-zoned, even though, at the time of the assessment, the property was zoned for agricultural use only, and no application for variance or zoning change was pending.[1] We reverse and remand.

ENF owns three vacant parcels of property in Millcreek Township, Erie County, Pennsylvania, identified by Tax Parcel Numbers (33) 141–553.0–017.00 (Southwest parcel), (33) 141–555.0–010.00 (Northwest parcel) and (33) 168–668.0–004.00 (Southeast parcel.) These properties are situated generally at the intersection of Interstate 79 (I–79) and Interchange Road. Interchange Road is a six-lane thoroughfare through a predominantly commercially developed area with entrances and exits to I–79.[2] (Trial ct.'s Findings of Fact, No. 21.) At the time of the apprais-

al, the three parcels in question were the only multi-acre undeveloped parcels on Interchange Road that were zoned for agricultural use; the remaining properties in the immediate area were residentially and commercially developed. (Trial ct.'s Findings of Fact, No. 9.) No application for variance or zoning change was pending for any of the three parcels.[3] (Trial ct.'s Findings of Fact, No. 10.)

On or about July 1, 2001, pursuant to a court-ordered tax reassessment of all property situated in Erie County, a tax assessor appraised the Southwest parcel at $55,900, the Northwest parcel at $112,300 and the Southeast parcel at $76,400, effective January 1, 2003. (Trial ct.'s Findings of Fact, Nos. 1–6, 8.)

■ On or about August 7, 2002, the Millcreek Township School District (School District) filed separate Notices of Intention to Appeal Property Assessment, challenging the values established for each of the three parcels in the countywide reassessment. At the appeal hearing before the Board, the School District presented evidence that properties in the vicinity of ENF's parcels had been re-zoned from agricultural to commercial use. The School District also introduced two appraisals of the properties: a December 8, 1999, appraisal by Marinelli Appraisals and Real Property Services (Marinelli appraisal) and a December 8, 1999, appraisal

1. A March 12, 2004, order of the trial court certified the issues herein for an interlocutory appeal pursuant to Pa. R.A.P. 1311(a) and (b), deeming that the order involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter. Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b). The parties have stipulated to the facts in this case.

2. The record reflects that a number of surrounding properties have a pattern of zoning

changes from agricultural to commercial between 1986 and 2003. (Trial ct.'s Findings of Fact, Nos. 20, 22–23, 25, 27–30.)

3. On July 13, 1992, the Benchmark Group had applied to re-zone the Southeast parcel from agricultural to D-business pursuant to an agreement of sale contingent on the buyer obtaining the re-zoning; however, this proposed zoning change was opposed, and, on August 27, 1992, the Benchmark Group withdrew its application. (Trial ct.'s Findings of Fact, No. 19.)

by William H. Eckert of Holland Metro, Inc., Realtors (Eckert appraisal.) Each of these appraisals determined the actual value of the properties using a highest and best use analysis.[4] Marinelli's appraisal concluded that the highest and best use of the properties was determined to be for development of mixed tenant and commercial/retail use, "[b]ased on the conclusion that demand does exist in the area for B–Business property . . . [and the] fact that it is reasonable to assume that the zoning can be changed." The Eckert appraisal similarly was made "[a]ssuming the likelihood of a zoning change for the subject property to A or B–Business." (Trial ct.'s Findings of Fact, Nos. 12, 16–18.)

Relying on these appraisals, the Board issued a November 5, 2002, Appeal Decision Notification that substantially increased the fair market value on each of ENF's three parcels of land: the Southwest parcel was increased from $55,900 to $250,000; the Northwest parcel was increased from $112,300 to $1,306,000 and the Southeast parcel was increased from $76,400 to $1,337,480. (Trial ct.'s Findings of Fact, No. 14.)

ENF appealed the Board's decision to the trial court which found that:

[I]t is reasonable to assume that the subject parcels could be readily re-zoned for commercial or business use and that the possibility of obtaining a re-zoning is not so speculative that the Court cannot admit evidence of the value of the property when used for its highest and best use.

(Trial ct. op. at 10.)

■ Based on this finding, the trial court affirmed, holding that it was appropriate for the appraisers to consider commercial development as the highest and best use of the properties for purposes of determining their actual value, even though such highest and best use would require the properties to be re-zoned. The trial court added, however, that the properties may not be taxed as if they are currently zoned for commercial purposes. ENF now appeals to this court for review.[5]

■ ENF first argues that the trial court erred when it held that property may be assessed for tax purposes based upon an appraisal which includes a hypothetical highest and best use that is contingent upon a change in zoning when the property owner has not applied for a zoning change.[6] We agree.

4. For purposes of tax assessment, real estate must be valued "according to the actual value thereof." Section 402 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, as amended, 72 P.S. § 5020–402. The term "actual value" is defined as market value or fair market value, which is defined as "the price, which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." F & M Schaeffer Brewing Company v. Lehigh County Board of Appeals, 530 Pa. 451, 457, 610 A.2d 1, 3 (1992) (quoting Buhl Foundation v. Board of Property Assessment, Appeals and Review, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962)). The highest and most profitable use to which land is adaptable is only one factor to consider in determining its price. Air Products & Chemicals, Inc. v. Board of Assessment Appeals, 720 A.2d 790 (Pa.Cmwlth.1998).

5. In a tax assessment appeal, our scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by the evidence. Appeal of Marple Springfield Center, Inc., 133 Pa.Cmwlth. 406, 576 A.2d 106 (1990), rev'd on other grounds, 530 Pa. 122, 607 A.2d 708 (1992).

6. ENF also argues that the Marinelli and Eckert appraisals "expressly valued the property as [i]f the three ENF parcels had already been re-zoned." (ENF's Reply Brief at 1.) However, the School District relies on Air Products for the proposition that hypothetical ways in

In *Appeal of Marple Springfield Center, Inc.*, 133 Pa.Cmwlth. 406, 576 A.2d 106 (1990), *rev'd on other grounds*, 530 Pa. 122, 607 A.2d 708 (1992), a property owner had applied for a variance that would allow him to construct a multiplex theatre on his property. The appellants contended that the trial court erred in failing to consider the proposed construction in determining the fair market value of the property, arguing that probable, as opposed to remote or speculative, changes could be considered for assessment purposes. This court agreed that factors based upon a reasonable probability existing at the time of the assessment are relevant to the determination of a property's fair market value; however, we stressed that factors based upon pure speculation, such as what a property would be worth in an altered condition, are irrelevant and may not be considered. Although the property owner had submitted an application for the required variance, we noted that the variance had not yet been granted, and we concluded that "the possibility that a variance may be issued is too speculative to permit such plans to be admitted." *Id.* at 109. Thus, we held that the trial court properly refused to admit plans for the proposed multiplex theater into evidence as a factor in assessing the property.

In the present case, ENF had not even applied for a variance or a zoning change at the time of the Marinelli and Eckert appraisals. Therefore, pursuant to *Marple*, the possibility that the properties might be rezoned for commercial use was pure speculation and should not have been considered in assessing those properties.[7]

which property could be used by potential buyers should be considered in determining what a willing buyer would pay for the property so long as the property is not valued as though it were already in that hypothetical condition. The School District contends that the appraisals in question here merely "took into consideration ... the reasonable probability that the subject property would be re-zoned [but] did not ... appraise the property as if the re-zoning had already occurred." (School District's Brief at 9.) We cannot agree.

To the contrary, we believe that the Marinelli and Eckert appraisals were based, not on the mere *potential* for re-zoning, but on the assumption that the property could, in fact, be re-zoned. Indeed, the trial court seems to have specifically ruled on this issue, justifying its admission of the appraisals by stating, "that the possibility of obtaining a re-zoning is not so speculative that the Court cannot admit evidence of the value of the property *when used* for its highest and best use." (Trial ct. op. at 10) (emphasis added). The trial court's finding that the appraisers valued the properties when used for commercial purposes is supported by two letters. A letter concerning the Marinelli appraisal states: "I did do an appraisal on the property *with the assumption that it could be rezoned ...*." (Marinelli Letter dated October 21, 2002, R.R.

22a) (emphasis added). Similarly, a letter concerning the Eckert appraisal states: "I appraised this property at the time for $1,650,000 based on the **hypothetical assumption** that the zoning of the entire property could be changed ...."(Eckert Letter dated October 21, 2002, R.R. 21a) (underlines added, bold type in original). Because we have held that the possibility of re-zoning is a matter of "pure speculation" and because both appraisals here are based on the assumption that the properties could be re-zoned from agricultural to commercial, the appraisals should be excluded as irrelevant to the determination of the properties' fair market value. *See Appeal of Marple Springfield Center, Inc.*, 133 Pa.Cmwlth. 406, 576 A.2d 106 (1990), *rev'd on other grounds*, 530 Pa. 122, 607 A.2d 708 (1992).

7. While "actual value" is the price, which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, any potential sale to a buyer who intended to use the property for commercial purposes would likely be contingent on obtaining a change in zoning, as legal commercial use of the property would require such a zoning change. A speculator who might buy the parcel for the purpose of commercial development without a zoning contingency speculates at his or her own risk. *See*

442 ■

Thus, the trial court erred as a matter of law in affirming the Board's decision to allow evidence of irrelevant appraisals based on such a speculative highest and best use of the property.[8]

Accordingly, we reverse and remand.[9]

### ORDER

AND NOW, this 12th day of November, 2004, the order of the Erie County Court of Common Pleas, dated February 17, 2004, is hereby reversed, and this case is remanded for adjudication consistent with the foregoing opinion.

Jurisdiction relinquished.

*McClure Appeal*, 415 Pa. 285, 203 A.2d 534 (1964); *Smolow v. City of Philadelphia Zoning Board of Adjustment*, 391 Pa. 71, 137 A.2d 251 (1958)

8. However, even if we were to conclude otherwise, the Board's decision to allow evidence of an appraisal based on a highest and best use of the property would still be pure speculation as a matter of fact. Because there is no evidence that ENF had even applied for a change in zoning, the trial court lacks substantial evidence for its factual determination that the properties could reasonably be re-zoned, and, thus, the possibility of re-zoning is pure speculation as a matter of fact.

9. In doing so, we would like to express this court's concern with the policy implications of the School District's argument. In considering the reasonable possibility that the properties could be re-zoned from agricultural to commercial use, despite the lack of any application for variance or zoning change, the assessment value of these properties was greatly increased over the original assessment value; the value of the Southwest parcel was increased 4.4 times, the value of the Northwest parcel was increased 11.6 times, and the value of the Southeast parcel was increased by a factor of 17.5. The dramatic increase in the assessment value of these properties based on the mere *possibility* of something, i.e. commercially zoned property, which the owner, quite literally, does not have and has not endeavored to obtain, would thrust upon the land owner a significantly higher tax burden which it might not be able to pay. As such, re-assessment based on such speculation could force a sale of the property due to the land owner's inability to pay property taxes, thereby effectuating something akin to a taking of the owner's land. While such a re-assessment scheme might encourage economically more efficient use of land, it would also trample on the property rights of the owner.