GUTHRIE CLINIC, LTD., Appellant

v.

SULLIVAN COUNTY BOARD OF ASSESSMENT APPEALS.

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2006.
Decided April 25, 2006.

Donald E. Wieand, Jr., Lehigh Valley, for appellant.

Alfred K. Hettinger, Allentown, for appellee.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Guthrie Clinic, Ltd. (Guthrie) appeals from the April 21, 2005, order of the Court of Common Pleas of the 44th Judicial District (Sullivan County Branch) (trial court), which denied Guthrie's request for an exemption from Pennsylvania real estate taxes for its clinic located in Dushore, Sullivan County (Dushore Clinic).

Guthrie, a medical group that incorporated in 1987 as a professional corporation,[1] employs approximately 220 physicians in various clinics that serve approximately forty communities throughout the northern tier of Pennsylvania and the southern tier of central New York. (R.R. 125a, 130a.) Among these, Guthrie operates the Dushore Clinic. Staffed by one physician specializing in internal medicine and a part-time nurse practitioner who specializes in family medicine, (R.R. at 218a), the Dushore Clinic provides primary medical care to residents of Sullivan County.

■ Guthrie is exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3),[2] and is exempt from paying Pennsylvania sales tax under the act known as the Institutions of Purely Public Charity Act, Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371–385 (Act 55). (R.R. at 125a.)

In August 2004, Guthrie applied to the Sullivan County Board of Assessment Appeals (Board) seeking a real estate tax exemption, as a purely public charity, for its Dushore Clinic. By a decision dated November 2, 2004, the Board denied Guthrie's exemption request, and Guthrie filed a timely appeal to the trial court, which held a *de novo* hearing on the matter.

At the hearing, James Armstrong, Guthrie's Chief Financial Officer, and Paul Chacona, Guthrie's Senior Vice President and Chief Operating Officer, testified regarding physician compensation. Armstrong explained that Guthrie sets physician compensation by first determining the *"productivity"* of each physician. Using a national survey, Guthrie then determines how other physicians with the same level of productivity are being compensated and

---

**1.** A physician/shareholder in the corporation may own more than one share, which has a par value of $1.00. Guthrie cannot pay dividends to its shareholders, but shareholders receive voting rights to elect the Guthrie Board of Directors.

**2.** In determining whether an entity is entitled to tax exemption under Pennsylvania law, it is irrelevant that the entity is exempt from paying federal income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). *Sacred Heart Healthcare System v. Commonwealth,* 673 A.2d 1021 (Pa.Cmwlth. 1996).

pays its physicians fifteen percent less than that amount. (R.R. at 144a–46a.) On cross-examination, Armstrong admitted that the more a physician "*produces,*" the higher the salary and that there is a financial incentive for physicians to be more "*productive.*" (R.R. at 193a, 211a.) For example, Armstrong testified that Dr. Deshmukh's salary was based on his productivity and that if Dr. Deshmukh produced an outstanding *amount,* he would receive a higher salary. (R.R. at 198a.) Armstrong also testified about Guthrie's Profit Sharing Plan/Pension Plan (Plan).[3] (R.R. at 149–51a, 195a–96a.) According to Armstrong, both individual employees and Guthrie make contributions to the Plan, with Guthrie making a set contribution of two percent of the employee's salary and a discretionary contribution. (R.R. at 150a, 195a–96a.) Armstrong stated that the Board of Directors determines the discretionary contribution to the Plan annually, and the current contribution was five percent of an employee's salary. (R.R. at 150a–51a, 196a.) Finally, Armstrong acknowledged that Guthrie's prime contract for physicians included a non-competition clause; he also admitted that Guthrie has a bonus program and that part of his compensation is subject to a bonus at the Board of Directors' discretion. (R.R. at 150a, 198a–99a, 211a.)

Chacona provided similar testimony regarding Guthrie's calculation of compensation for the physician at the Dushore Clinic, stating "we map [his compensation] out with a fifteen percent deduction *based on the revenues generated* as compared to the national survey." (R.R. at 223a) (emphasis added). On cross-examination, however, Chacona stated that a physician's compensation is based on that physician's "*productivity.*" (R.R. at 230a.)

 After considering the testimony, the trial court held that Guthrie had failed to qualify for the exemption as a purely public charity because Guthrie failed to demonstrate that it operated entirely free from private profit motive as required by both *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP*) and Act 55. The trial court found evidence that Guthrie bases the compensation of its physician employees on the financial performance of the institution and dismissed Guthrie's assertions that because its expenses have always exceeded its income, it has never generated a profit. (Trial ct. op. at 3.) Guthrie now appeals this decision.[4]

Guthrie argues that the trial court erred in affirming the Board's denial of the real estate tax exemption on the grounds that Guthrie does not operate entirely free from private profit motive and, thus, is not a purely public charity under *HUP* and Act 55.

 Initially, we recognize that an institution seeking a real estate tax exemption bears a heavy burden. *Saint Joseph Hos-*

3. Although Armstrong stated that the Plan was really a retirement plan, he acknowledged that the Plan was created as a Profit Sharing Plan and is still called the "Guthrie Clinic Profit Sharing Plan." (R.R. at 151a, 201a.)

4. In a tax assessment appeal, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law or whether its decision is supported by substantial evidence. *ENF*

*Family Partnership v. Erie County Board of Assessment Appeals,* 861 A.2d 438 (Pa. Cmwlth.2004), *appeal denied,* 584 Pa. 681, 880 A.2d 1241 (2005). A property owner's entitlement to tax exemption is a mixed question of fact and law and absent an abuse of discretion or a lack of supporting evidence, this court will not disturb the trial court's decision. *Lyons v. City of Philadelphia Board of Revision of Taxes,* 828 A.2d 485 (Pa. Cmwlth.2003).

pital v. Berks County Board of Assessment Appeals, 709 A.2d 928 (Pa.Cmwlth. 1998). First, the institution must prove that it is a "purely public charity" by satisfying the test set forth by our supreme court in *HUP*. *Lewistown Hospital v. Mifflin County Board of Assessment Appeals*, 706 A.2d 1269 (Pa.Cmwlth.1998), *appeal denied*, 563 Pa. 679, 759 A.2d 925 (2000). Under *HUP*, 507 Pa. at 21–22, 487 A.2d at 1317 (emphasis added), a "purely public charity" must possess *all* of the following characteristics:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) *Operates entirely free from private profit motive.*

After meeting the *HUP* requirements, the institution still must satisfy all of the five quantitative elements established by the General Assembly in section 5 of Act 55, 10 P.S. § 375, before the institution qualifies as a purely public charity. *Community Options, Inc. v. Board of Property Assessment*, 571 Pa. 672, 813 A.2d 680 (2002). Relevant here is the requirement in section 375(c), which provides: the institution must operate entirely free from private profit motive. Notwithstanding whether the institution's revenues exceed its expenses, this criterion is satisfied if the institution meets *all* of the following:

(1) Neither the institution's net earnings nor donations which it receives inures to the benefit of private shareholders or other individuals....

(2) The institution applies or reserves all revenue, including contributions, in excess of expenses in furtherance of its charitable purpose....

(3) *Compensation, including benefits, of any director, officer or employee is not based primarily upon the financial performance of the institution.*

(4) The governing body of the institution of purely public charity has adopted as part of its articles of incorporation ... a provision that expressly prohibits the use of any surplus funds for private inurement to any person in the event of a sale or dissolution of the institution of purely public charity.

10 P.S. § 375(c) (emphasis added). If the institution meets all of these requirements, it is considered a "purely public charity."

■■■ However, this status by itself does not automatically entitle the entity to the tax exemption. Rather, the institution also is required to prove that it is eligible for a charitable tax exemption under the appropriate county assessment law, in this case, section 202 of The Fourth to Eighth Class County Assessment Law (Assessment Law), Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. § 5453.202.[5] *See e.g.*, *Community General Osteopathic Hospital v. Dauphin County Board of Assessment Appeals*, 706 A.2d 383 (Pa.Cmwlth.1998), *aff'd*, 562 Pa. 229, 754 A.2d 679 (2000); *Mt. Macrina Manor, Inc. v. Fayette County*

5. Guthrie cites as authority section 204 of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204. However, because Sullivan County has a population of less than 20,000 and, therefore, is classified as an eighth class county, *see* section 210 of The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 210, section 202 of the Assessment Law applies. Tax exemption statutes, like section 202(a)(3) of the Assessment Law, are to be strictly construed against the institution seeking the exemption. Section 1928(b)(5) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1928(b)(5).

*Board of Assessment Appeals,* 683 A.2d 935 (Pa.Cmwlth.1996). Only when the institution successfully proves *all* of the elements above, is it entitled to an exemption from real estate taxes. According to Guthrie, the trial court committed three errors in ruling that Guthrie did not qualify for the tax exemption. We disagree.

■ Guthrie first maintains that the trial court improperly concluded that an entity's entitlement to the tax exemption depends upon whether that entity operates at a profit or loss.[6] However, contrary to Guthrie's assertion, the trial court did not base its decision on the fact that Guthrie realized a profit. Rather, the trial court reasoned that Guthrie was not a "purely public charity" because there is evidence that the compensation of the physician employees of Guthrie is based on the financial performance of the institution. (Trial ct. op. at 3.)

■ Next, Guthrie contends that the trial court erred by addressing only section 375(c)(3) (compensation, including benefits, is based primarily on the institution's financial performance) and ignoring the remaining three criteria set forth in section 375(c) of Act 55 to determine whether Guthrie operates entirely free from private profit motive. However, in order to qualify as an institution operating entirely free from private profit motive under section 375(c) of Act 55, the institution must meet *all* four of the criteria set forth in that

section. Therefore, once the trial court concluded that Guthrie failed to satisfy one of the requirements, specifically section 375(c)(3), the trial court chose not to address the remaining criteria. It did not err in doing so.

■ Finally, Guthrie argues that the record does not contain substantial evidence to support the trial court's finding that the compensation of Guthrie's physician employees is based primarily on Guthrie's financial performance.[7] As the institution seeking the tax exemption, Guthrie bears the burden of proving that its employees' compensation, including *benefits,* is *not* primarily based on Guthrie's financial performance. *Saint Joseph Hospital.*

■ The trial court concluded that Guthrie had failed to meet this burden, and we agree. Although Armstrong testified that physician compensation is *not* based on Guthrie's financial performance,[8] he also testified that: (1) physician compensation is based on that physician's "productivity" and agreed that when a physician produces an outstanding *amount,* then that physician receives a higher salary, (R.R. at 198a); (2) Guthrie offers a "Profit Sharing Plan," part of which consists of discretionary contributions made by the Board of Directors; and (3) Guthrie's bonus program allows the Board of Directors to give bonuses to employees at its discretion. Further, Chaco-

6. It is well-settled law that surplus revenue is not synonymous with private profit, so as to preclude an entity from being exempt from real estate taxes as a purely public charity. *See e.g., Wilson Area School District v. Easton Hospital,* 561 Pa. 1, 747 A.2d 877 (2000); *Saint Joseph Hospital.*

7. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985).

8. The trial court implicitly rejected Armstrong's testimony by holding otherwise. In tax assessment cases, the trial court is the fact finder and matters of credibility and evidentiary weight are solely within the trial court's province. *Lyons.* Moreover, the fact finder may accept portions of any witness's testimony, while rejecting others. *Riggle v. Workers' Compensation Appeal Board (Precision Marshall Steel Co.),* 890 A.2d 50 (Pa.Cmwlth. 2006).

na testified that Dushore's physician's compensation is based on the *revenue* the physician produces for Guthrie.[9] A reasonable mind could conclude from this testimony that Guthrie failed to meet at least one of the *HUP* and Act 55 requirements, rendering Guthrie ineligible for the real estate tax exemption as a purely public charity, the trial court did not err by affirming the Board's decision.[10]

Accordingly, we affirm.

### ORDER

AND NOW, this 25th day of April, 2006, the April 21, 2005, order of the Court of Common Pleas of the 44th Judicial District (Sullivan County Branch) is hereby affirmed.

---

9. Guthrie offers no explanation regarding the meaning of "productivity"; for example, whether it is hours worked, patients seen, revenue raised or referrals to other Guthrie facilities.

10. Guthrie also asserts that the record does not support the trial court's conclusion that Guthrie would use any profits earned to increase the compensation to Guthrie's physician shareholders, rather than to provide services for the poor. We disagree. Although Armstrong testified that any excess revenue would be used in furtherance of Guthrie's charitable purpose, (R.R. at 132a–33a), he also testified about physician compensation based on productivity, the Board's discretionary contributions to the "Profit Sharing Plan" and bonuses that are distributed at the Board's discretion. The trial court, as fact finder, impliedly rejected the former part of Armstrong's testimony while accepting the latter, which it was free to do. *Riggle.* A reasonable mind could consider the credited evidence adequate to support the trial court's conclusion that Guthrie would use profits to increase the compensation of its physician shareholders.