**CHARTIERS VALLEY INDUSTRIAL & COMMERCIAL DEVELOPMENT AUTHORITY, Maurice A. Nernberg and Nancy N. Nernberg, Appellants**

v.

**ALLEGHENY COUNTY, City of Pittsburgh, and City of Pittsburgh School District.**

Commonwealth Court of Pennsylvania.

Argued Oct. 14, 2008.

Decided Dec. 5, 2008.

Reargument Denied Feb. 4, 2009.

---

Maurice A. Nernberg, Pittsburgh, for appellants, Maurice A. Nernberg and Nancy N. Nernberg.

Ronald H. Pferdehirt, Pittsburgh, for appellee, City of Pittsburgh.

Claude C. Council, Jr., Pittsburgh, for appellee, City of Pittsburgh School District.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

Opinion by Senior Judge KELLEY.

Chartiers Valley Industrial & Commercial Development Authority, Maurice A. Nernberg and Nancy N. Nernberg (hereinafter collectively referred to as "Owners")[1] appeal from the January 15, 2008 order of the Court of Common Pleas (trial court) ordering that the assessed value of their commercial property for years 2005–2007 is $306,300. We affirm.[2]

Owners own a seven story office building located in downtown Pittsburgh (First Ward) at 301 Smithfield Street. Maurice Nernberg uses the first 4 floors of the building to conduct his law practice. The upper 3 floors are vacant. For the year 2005, the building was assigned an assessed value of $451,500 based upon an established predetermined ratio of 100%.

Owners appealed the assessment and a hearing was held after which the Board of Property Assessment Appeals and Review (Board) reduced the building's assessed value to $306,300. Owners appealed the Board's reduction in assessment to the trial court.

The trial court conducted a *de novo* hearing on Owners' appeal on October 30, 2007, which covered the years 2005–2007. Owners and the taxing bodies agreed that the fair market value of the building as of 2002 is $306,300; therefore, under Allegheny County's method of assessment, the assessed value for the base year 2002 was also $306,300. Reproduced Record (R.R.) at 52a. Mr. Nernberg specifically informed the trial court that Owners were not attempting to take the property's current fair market value and reduce it. Id. Instead, Mr. Nernberg informed the trial court that the base year value had to be reduced to the common level ratio (CLR). *Id.* at 53a.

Before the trial court, Owners contended that the value of the building should be reduced further because in 2005–2007 other properties within Allegheny County were assessed at less than 100% of fair market value. In support, Owners submitted into evidence: (1) 15 property sales of other properties in 2004 in which the ratio of the total assessed values to the total sales prices is 60.13%; (2) 15 property sales of other properties in 2005 in which the ratio of the total assessed values to the total sales prices is 64.64%; and (3) 15 property sales of other properties in 2006 in which the ratio of the total assessed values to the total sales prices is 59.05%.

---

1. Maurice A. Nernberg is an attorney licensed to practice in Pennsylvania. Attorney Nernberg is the attorney of record in this case.

2. By order of October 3, 2008, this Court ordered that the instant appeal be argued seriately with the appeal docketed as *Maurice A. Nernberg and Nancy C. Nernberg v. Board of Property Assessment, Appeals and Review, City of Pittsburgh School District, County of Allegheny and City of Pittsburgh*, No. 285 C.D. 2008.

Owners argued that the 2002 base year value of the building should be reduced so that the ratio of the total assessed value to actual value of the property, using 2002 assessed values, does not exceed 60.13% in 2004, 64.64% in 2005 and 59.05% for 2006.[3]

The trial court determined that none of the 45 property sales for the years 2004–2006 involved properties located in downtown Pittsburgh which is comprised of the First and Second Wards. Most of the 45 properties are single-family residential properties and Mr. Nernberg testified that a person in his office selected the properties. Mr. Nernberg did not explain why these properties were selected.

The taxing bodies presented an expert witness who described what she believed to be all arms-length sales of commercial properties in the First and Second Wards of Pittsburgh for 2004, 2005, 2006 and 2007 (ending June 2007). In the foregoing years, the total sales prices of these properties exceeded their total assessed values.

The trial court determined that since Owners stipulated that the fair market value of their building for the 2002 base year is its assessed value, Owners' property is valued in the same fashion as all other properties are intended to be valued. The trial court pointed out that because Owners have stipulated that the assessed value of their property does not exceed the actual fair market value for 2002, the theory that their property's assessed value exceeds the fair market value using the base year value is not helpful to Owners. While a taxpayer may also seek a reduction in the assessed value by showing that the actual value of the property as reduced by the CLR is less than the 2002 base year

value, the trial court pointed out that Owners have not elected to challenge the assessed value on these grounds.

The trial court also rejected Owners' contention that they were entitled to a reduction based on *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 590 Pa. 459, 913 A.2d 194 (2006), which is based on the Uniformity Clause of the Pennsylvania Constitution.[4] Therein, the Supreme Court held a taxpayer has a right to claim his assessment violates the Uniformity Clause even where the difference between the predetermined ratio and the CLR is less than 15%. The Supreme Court also permitted uniformity challenges based on "meaningful sub-classifications." In short, the Supreme Court held that assessments could also be challenged based on the lack of uniformity in the assessment of properties having like characteristics and qualities.

With respect to Owners' appeal, the trial court noted that the only sub-classification into which Owners' property might fall would involve office buildings; however, the taxing bodies introduced credible evidence showing that downtown office buildings are not under assessed. Consequently, Owners cannot contend that their office building is over assessed in comparison to other office buildings.

■ In addition, the trial court pointed out that Owners did not rely on sales of similar kinds of businesses or properties but instead relied upon sales of mostly residential properties for the years 2004–2006. This evidence cannot support a claim that office buildings are a separate

---

3. In 2002, Allegheny County's CLR was 97.5% and in 2006, the CLR was 87.3%.

4. The Uniformity Clause of the Pennsylvania Constitution states:

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under the general laws. Pa. Const. art. VIII, § 1.

sub-classification that is over assessed. Finally, the trial court stated that this case was not controlled by *Downingtown* as the present matter does not involve a challenge based on either the CLR for Allegheny County or a lack of uniformity of properties having like characteristics and qualities. Accordingly, the trial court found that the assessed value of Owners' property for years 2005–2007 is $306,300. This appeal followed.[5]

Owners raise the following issues for our review: (1) Whether downtown office buildings are a permissible sub-classification of real estate under the assessment law so that they may be assessed differently than other properties; and (2) Whether it is constitutionally permissible to assess office buildings at one CLR and residential property at another lesser ratio.

Since 2002, Allegheny County has used the method of assessing all taxable properties at 100% of their 2002 actual values.[6] Herein, Owners agreed that the fair market value of their property as of the 2002 base year is $306,300.[7] R.R. at 52a. In a county using a base year method of assess-

ment, a taxpayer who contends that his property is unfairly assessed has two statutory remedies under the assessment laws. A taxpayer may file an appeal on the ground that the assessed value exceeds the fair market value, using the base year value. *Daugherty.* A taxpayer may also seek reduction in the assessed value by showing that the actual value of the property as reduced by the county's CLR[8] is less than the 2002 base year value. *Id.* The third method of challenging an assessment based on uniformity is recognized by our Supreme Court in *Downingtown* as set forth above.

Initially, we note that Owners' arguments in support of this appeal ignore the fact that they stipulated that the fair market value of their building for the 2002 base year is its assessed value of $306,300. As such, they proceed with an argument based on the CLR that the trial court incorrectly describes their position and the law as set forth in *Downingtown.* Owners contend that all property including both commercial and residential is comparable for applying a proper ratio to the fair

---

5. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law or whether its decision is supported by substantial evidence. *Grace Center Community Living Corporation v. County of Indiana,* 796 A.2d 1008 (Pa. Cmwlth.2002).

6. The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. 5020–101–5020–602, and what is commonly referred to as the Second Class County Assessment Code, Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. §§ 5452.1–5452.20, each authorize Allegheny County to choose either a base year market value or a current market value in any county-wide assessment of taxable property. *See Daugherty v. County of Allegheny,* 920 A.2d 936 (Pa.Cmwlth.2007).

7. Section 1.1 of the Second Class County Assessment Code, *added by,* Act of December 13,

1982, P.L. 1186, *as amended,* 72 P.S. § 5452.1a, defines "base year" as:

> [T]he year upon which real property market values are based for the most recent county-wide revision of assessment of real property, or other prior year upon which the market value of all real property of the county is based. Real property market values shall be equalized within the county and any changes by the board shall be expressed in terms of such base year values.

8. Section 1.1 of the Second Class County Assessment Code defines "common level ratio" as:

> [T]he ratio of assessed value to current market value used generally in the county as last determined by the State Tax Equalization Board pursuant to the act of June 27, 1947 (P.L. 1046, No. 447), referred to as the State Tax Equalization Board Law.

72 P.S. § 5452.1a (footnotes omitted).

market value as determined. Owners argue that classification only goes to the method of valuing the property.

Owners also argue that the trial court erred in finding the City's expert's testimony was to be given more weight because the City introduced credible evidence showing that downtown office buildings are not under assessed. Owners' contend that Pennsylvania law does not permit unequal taxation of different types of properties. Owners' point out that the City's expert relied solely on sales prices as the determinant of value and restricted her analysis to commercial properties and in doing so she ignored the possibility of determining value based on income.[9] Owners' contend that such an analysis was not equivalent to their random analysis.

As such, the expert and the trial court treated downtown Pittsburgh office buildings as a subclass of property to be assessed at a higher ratio than residential property, a categorization not permitted under the Uniformity Clause or *Downingtown*. In short, Owners contend that they cannot be subjected to a CLR based on a subclass of properties which are the highest CLR in the County and that their ratios should be applied for purposes of this appeal.

As stated previously herein, a taxpayer may file an appeal on the ground that the assessed value exceeds the fair market value using the base year value. *See* Section 10 of the Second Class County Assessment Code, 72 P.S. § 5452.10;[10] *Daugher-*

---

**9.** Mr. Nernberg never asked the City's expert on cross why she did not value the properties based on income stream.

**10.** Section 10 provides as follows:

(a) The board shall, as provided by this act and by the provisions of existing law, examine and revise the assessments and valuations, increasing or decreasing the same as in their judgment may seem proper, and shall add thereto such property or subjects of taxation as may have been omitted.
(b) After such revision, the board shall, by rule, fix convenient times for the hearing of appeals from said assessments and valuations.
(c) In any appeal of an assessment the board shall make the following determinations:
(1) The current market value for the tax year in question.
(2) The common level ratio.
(3) The fair market value, as determined in accordance with section 402 of the act of May 22, 1933 (P.L. 853, No. 155), known as "The General County Assessment Law."
(d) The board, after determining the current market value of the property for the tax year in question, shall then apply the established predetermined ratio to such value unless the common level ratio varies by more than fifteen percent (15%) from the established predetermined ratio, in which

case the board shall apply the common level ratio to the current market value of the property for the tax year in question. For the initial year of the implementation of county-wide reassessment, appeals shall be solely on the basis of fair market value.
(e) Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio.
(f) Except as provided for in subsection (g), the valuations determined in accordance with this section shall stand as the valuations for the assessments of all county and institution district taxes and for such other political subdivisions as levy their taxes on county assessments and valuations in the county until the next triennial assessment.
(g) Persons who have suffered catastrophic losses to their property shall have the right to appeal before the board, within the remainder of the county fiscal year in which the catastrophic loss occurred, or within six (6) months of the date on which the catastrophic loss occurred, whichever time period is longer. The duty of the board shall be to reassess the value of the property in the following manner: the value of the property before the catastrophic loss based on the percentage of the taxable year for which the property stood at its former value, added to the value of the property after the catastrophic loss, based on the percentage of the taxable year for which the property

*ty.* As pointed out by the trial court, Owners have stipulated in this case that the assessed value of their property does not exceed the actual fair market value for 2002. Owners have also not elected to challenge the assessed value of their property on the statutory grounds that the actual value of their property, as reduced by Allegheny County's CLR, is less than the 2002 base year value. *Id.* Instead, Owners attempted to calculate their own CLR for each tax year at issue in this matter. Therefore, the remaining method for challenging an assessment is the method based on the Uniformity Clause of the Pennsylvania Constitution as recognized by our Supreme Court in *Downingtown.*

The Supreme Court in *Downingtown* concluded that tax assessments could also be challenged based on the lack of uniformity in the assessment of properties having like characteristics and qualities in the same area. In reaching this conclusion, the Supreme Court stated that a taxpayer may prove lack of uniformity "by presenting evidence of the assessment-to-value ratios of '*similar properties of the same nature in the neighborhood.*'" *Downingtown,* 590 Pa. at 467, 913 A.2d at 199 (quoting *In re Brooks Building,* 391 Pa. 94, 101, 137 A.2d 273, 276 (1958)). The Supreme Court stated further that it had previously acknowledged in *Deitch Co. v. Board of Property Assessment, Appeals & Review of Allegheny County,* 417 Pa. 213, 209 A.2d 397 (1965), "that all properties in a relevant taxing district are comparable properties for purposes of calculating the appropriate ratio of assessed value to market value (as all real estate is a class which is entitled to uniform treatment)." *Id.* at 467, 913 A.2d at 199. However, the Supreme Court pointed out that, in the context of a uniformity challenge, "the parties and the trial court may rely upon evidence concerning the assessment-to-value ratio of similar properties." Id. The Supreme Court stated further that it did not find that the general uniformity precept, precluding real property from being divided into different classes for purposes of systemic property tax assessment, eliminated any opportunity or need to consider meaningful sub-classifications as a component of the overall evaluation of uniform treatment in the application of the taxation scheme. Id. at 469, 913 A.2d at 200. As such, the Supreme Court concluded that "[w]hile the Commonwealth may certainly seek to achieve overall uniformity by attempting to standardize treatment among differently situated property owners, its efforts in this regard do not shield it from the prevailing requirement that similarly situated taxpayers should not be deliberately treated differently by the taxing authorities." *Id.* at 470, 913 A.2d at 201.

 In the present case, the property at issue is a commercial office building located in downtown Pittsburgh. Therefore, while Owners are correct that Pennsylvania law does not permit unequal taxation of

stood at its reduced value. Any property improvements made subsequent to the catastrophic loss in the same tax year shall not be included in the reassessment as herein described for that tax year. Any adjustment in an assessment pursuant to this subsection (1) shall be reflected by the appropriate taxing authorities in the form of a credit for the next succeeding tax year; or (2) upon application by the property owner to the appropriate taxing authorities, shall result in a refund being paid to the property owner at the time of issuance of the tax notice for the next succeeding tax year by the respective taxing authorities. For purposes of this subsection, the phrase "catastrophic loss" shall mean any loss due to mine subsidence, fire, flood or other natural disaster which affects the physical state of the real property and which exceeds fifty percent (50%) of the market value of the real property prior to the loss.

different types of properties, the issue in this case is whether Owners' commercial property is being over assessed in comparison to other commercial properties located in the same taxing area. The trial court found the testimony of the taxing bodies' expert witness credible showing that downtown office buildings are not under assessed. Consequently, the trial court found that Owners could not contend that their office building is over assessed in comparison to other office buildings.

In addition, the trial court pointed out that Owners did not rely upon sales of similar kinds of businesses or properties but instead relied upon sales of mostly residential properties for the years 2004–2006. The trial court determined that none of the 45 property sales for the years 2004–2006 involved properties located in downtown Pittsburgh which is comprised of the First and Second Wards. As found by the trial court, this evidence cannot support a claim that office buildings are a separate sub-classification that is over assessed.

When performing *de novo* review, the trial court is the ultimate finder of fact. *Guthrie Clinic, Ltd. v. Sullivan County Board of Assessment Appeals*, 898 A.2d 1194 (Pa.Cmwlth.2006). As fact-finder, the trial court maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence. Id. As a result, this Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result. Therefore, we reject Owners' contention that the trial court erred in finding the taxing bodies' expert's testimony was to be given more weight.

Accordingly, the trial court's order is affirmed.

## ORDER

AND NOW, this 5th day of December, 2008, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.