# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Petition of the Board of School   :
Directors of the Hatboro-Horsham   :
School District for the Sale of Real   :
Property   :
  :   No. 1001 C.D. 2022
  :   ARGUED: November 6, 2023
Appeal of: Peggy Ambler and John   :
Ambler   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED: December 7, 2023**


Peggy and John Ambler appeal from the order of the Court of Common Pleas of Montgomery County granting the petition of the Board of School Directors of the Hatfield-Horsham School District for the sale of unused and unnecessary property and buildings.[1]  We affirm.

On the property in question sits the long-defunct Limekiln Simmons School.  In November 2016, the Board approved an agreement of sale of the property to the Danny Jake Corporation for $593,140.  A petition to approve the sale was filed in the trial court under Section 707(3) of the Public School Code of 1949,[2] 24 P.S. §

---

[1] The Amblers have engaged in a long-running opposition to the sale of the Limekiln Simmons School property, which adjoins their own.  For several years the matter took a detour, as the Amblers challenged the proper law controlling the sale, resulting in an order transferring the petition to orphans' court and then an appeal to this Court.  *See Ambler v. Bd. of Sch. Dirs. of Hatboro-Horsham Sch. Dist.*, 223 A.3d 289 (Pa. Cmwlth. 2019).  The issues in that decision are of no import here.

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 7-707(3).

7-707(3). Hearings were held before the trial court in which the Amblers intervened and objected to the sale. The Amblers cross-examined the District's witnesses, including the appraisers whose affidavits were offered to satisfy the requirements of Section 707(3) and the director of business affairs for the District, Robert Reichert, concerning the legal description of the property appended to the petition as an exhibit.

With respect to the appraisal, the appraisers signed affidavits which were attached to the petition, attesting that the private sale price was more than what could be obtained at a public sale. They were qualified as experts in the field of real estate appraisal, without objection, and without competing experts offered to rebut their testimony. They expressed the opinion, albeit based upon limited experience, that properties which sold at auction sold below market price. Mark Abissi, one of the appraisers, testified on redirect as follows:

> Q. Mr. Abissi, if the property had been taken for a public auction, do you believe that the value being provided in this Agreement of Sale and the value to which you've described -- that you have described is higher than that which would have been attained at a public auction?
>
> A. Yes.

[Notes of Test. "N.T." Jan. 30, 2018 at 55, Reproduced R. "R.R." at 478a; *see also id.* at 57, R.R. at 480a ("[t]he only thing I have are [a] few sales that I've dealt with where they sold for below market price and they were sold at a public auction").]

Carol Rush, the other appraiser, testified that she had been involved with a half-dozen public sales over ten years (N.T. Jan. 30, 2018 at 77, R.R. at 500a), and reaffirmed her affidavit statement that the private sale to the Danny Jake Corporation was for a better price than could be obtained at public sale (*id.* at 75, R.R. at 498a). Ms. Rush testified that public sales were a form of distressed sale and

"do[] not meet the tested market value." (*Id*. at 79-80, R.R. at 502a-03a.) The trial court accepted the testimony of the appraisers as credible.[3]

Also appended to the petition was a "legal description," identical to a *portion* of the metes and bounds description contained in a 1932 deed conveyed to the District's predecessor. (Pet., Ex. A, Legal Description, R.R. at 11a.) The 1932 deed, but *not* the petition or its exhibits, states that the property "[c]ontain[s] ten and one hundred eighty-two one thousandths [(10.182)] acres of ground." (Joint Ex. J-1, R.R. at 372a.) When questioned on the discrepancy with the "±10.52 acres" proposed to be sold in the petition and agreement of sale, Mr. Reichert volunteered the following explanation:

> THE WITNESS: I guess to my recollection, it would not surprise me because there was another piece transferred in '56.
>
> Q. So, the 1932 description couldn't have included the additional land that Howard Ambler, Jr. sold to the School District?
>
> A. Correct.

---

[3] The trial court further opined as follows:

> A public sale is <u>not</u> an accepted method of valuation. And, prior to public sale (or auction), before the hammer actually falls, it is impossible, indeed, reckless, for one to render an opinion on fair market value at auction. There is no fair market value at public sale. It is pure speculation . . . . Public sales of all sorts, sheriff sales, tax upset sales, and the like, draw speculators of all types, looking for bargains. The expert witnesses' testimony was candid in that one cannot, responsibly, beforehand, render a specific value for public sale because there is no accepted methodology in the industry for the same.

[Trial Ct. Op. at 22-23 (emphasis original).]

(N.T. Nov. 13, 2017 at 29, R.R. at 452a.)  There is no information about the size of the land acquired from Howard Ambler, Jr., as a timeline of the Limekiln Simmons School entered into evidence as District Exhibit 2 states:

> September 10, 1957 – Real Estate transferred from Howard Ambler, Jr. to Horsham Township School District for $100.00 (Deed Book 2819/Page 323) – Part of Premises of Thomas Ambler that was given to Howard Ambler on June 5, 1950 (Deed Book 2090/Page 399). *There is no indication how large this piece of property is/was.*

[Dist. Ex. No. 2, Limekiln Simmons Timeline, R.R. at 144a (emphasis supplied).] Further, there is no information of record as to whether the additional land is part of the parcel being sold, other than Mr. Reichert's speculation on cross-examination.

After an earlier interlocutory appeal had run its course,[4] the trial court set a hearing for July 29, 2022.  The Amblers renewed their objections to the private sale and raised another issue: that the husband of a Board director who had recused herself from the vote on the private sale agreement stood to gain real estate commission fees on the sale.  After further briefing, the trial court signed an order approving the private sale agreement.  Thereafter, the Amblers filed their instant appeal.

On appeal, the Amblers set forth the following issues:

> [1] Did the trial court err in approving the sale despite the lack of any comparison to a price that could be achieved at public sale, as required by [Section 707(3)]?

> [2] Did the trial court err in approving the sale, despite [the] failure to provide a full and complete description of the land proposed to be sold?

---

[4] *See supra* note 1.

[3] Did the trial court err in failing to consider ethical considerations raised by the Amblers?

(Ambler Br. at 4-5.) We address these issues in turn.

*Valuation*

The Amblers' first two issues concern Section 707(3) of the Code, which provides, in pertinent part, as follows:

> The board of school directors . . . is hereby vested with the necessary . . . authority to sell unused and unnecessary lands . . . , by any of the following methods and subject to the following provisions:
>
> (1) By public auction . . . .
>
> . . . .
>
> (3) At private sale, subject to the approval of the court of common pleas of the county in which the school district is located. Approval of the court shall be on petition of the board of school directors, which . . . shall contain *a full and complete description* of the land proposed to be sold . . . and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefor is a fair and reasonable one and *in their opinion a better price than could be obtained at public sale* . . . .

24 P.S. § 7-707(3) (emphasis supplied). "Public auction" and "public sale," although undefined by the Code, appear to be synonymous.

Regarding the first issue, the Amblers first argue that the trial court erred in finding that the price to be paid by the proposed buyer was "better . . . than could be obtained at public sale," 24 P.S. § 7-707(3), because there was "no evidence provided" for that element of Section 707(3) "exclusive of merely conclusory statements and speculation on cross and re-direct examination," (Ambler Br. at 11-

5

12).  The Amblers also argue that the testimony was otherwise unreliable and that the trial court made various mistakes, set forth below.

The Amblers acknowledge that the affidavits, supported by testimony from the appraisers, stated the appraisers' belief that the price was better than could be achieved at public sale.  The Amblers find fault with the appraisers' testimony and the trial court's reliance upon it for the following reasons: the appraisers had limited knowledge of public sales, particularly those in Horsham Township; the appraisers did not determine what price would be realized at a public sale and did not compare such a price to the amount agreed upon in the proposed private sale; and the appraisers "did not answer a concern . . . raised" regarding contingencies in the private sale agreement, which by the terms of the contract would allow the buyer to refuse to consummate the private sale, (Ambler Br. at 17).  The Amblers suggest that we read Section 707(3) to include a requirement that the appraisers determine a price that might be obtained at public sale with which to compare the private sale price and contend that the gaps in the knowledge of the appraisers revealed on cross-examination provide sufficient rebuttal to reject their opinions that the private sale provided a better price than might be obtained at public sale.

In reviewing Section 707(3) of the Code,[5] we find no particular requirement that the affiants review or testify to a specific quantity of public sales,

---

[5] "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Matter of Private Sale of Property by Millcreek Twp. Sch. Dist.*, 185 A.3d 282, 291 (Pa. 2018) (*Millcreek Twp. Sch. Dist.*) [quoting Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b)].  Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent.  *Id.*; 1 Pa.C.S. § 1921(c).

6

public sales in a single township, or public sales of a particular type[6]—rather, they are to be "familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located[.]" 24 P.S. § 7-707(3). There is also no requirement that the affiants suggest a particular value that might be obtained at public sale for a piece of property with which to compare the private sale price. Rather, under Section 707(3), the affiants need do no more than what they have done here: provide an *expert opinion* that the proposed private sale would obtain a better price than public sale.[7] The trial court found the expert opinion of the appraisers to be credible and the factual basis for their opinions to be sufficient. The Amblers offer several reasons why the trial court should have rejected the opinions of the appraisers, but that is beyond our purview. It was the province of the trial court, as the finder of fact, to weigh the evidence before it, make credibility determinations, and draw reasonable inferences from the evidence presented—which it did. *Barylak v. Montgomery Cnty. Tax Claim Bureau*, 74 A.3d 414, 417 (Pa. Cmwlth. 2013).

Objectors raise several other contentions: the appraisers differed as to whether the price in the private sale agreement was more or less than the fair market value of the property, to a degree of a few thousand dollars; the appraisers "failed" to take into account "deductions" for the "speculative" nature of the private sale agreement (Ambler Br. at 20); the trial court erred in allowing evidence as to costs the buyer would incur, particularly water and sewer hookups and commissions, which the Amblers argue are irrelevant to the valuation of the property; the trial court

---

[6] At oral argument, counsel for the Amblers suggested that public sales of farmland are common but conceded that such sales are not common in the locality at issue.

[7] Notably, it is beyond the authority of the courts to direct a public sale if they believe a better price may be had in that manner. *Millcreek Twp. Sch. Dist.*, 185 A.3d at 292. Rather, the sole function of the trial court is to approve or disapprove the proposed private sale. *Id.*

7

erred in estimating the sales commission as being $50,000; and the trial court erred in disallowing testimony regarding legal fees attendant to the private sale.[8]

In these arguments, the Amblers are simply quibbling with the opinions of the appraisers and details in the trial court's rulings and discussion which do not impact its key findings. It is not the province of this Court to reweigh the evidence.[9] The appraisers, qualified as expert witnesses, testified as to the fairness and reasonableness of the private sale price in view of their methodologies. The trial court, as factfinder, could accept their testimony, which it did, and determine that the price agreed upon was fair and reasonable, which it also did.

### *Description of Property*

Next, we turn to the Amblers' second issue, the question of the sufficiency of the description of the property in the petition. Section 707(3) requires the petition to contain "a full and complete description of the land proposed to be sold." 24 P.S. § 7-707(3). The Amblers claim the following as alleged defects in the description: (1) a difference of .338 acres between the description in the petition of the property to be sold and the description in the deed conveyed to the District's predecessor, and (2) "[a] portion of the parcel in the evidence is completely mislocated, creating irreconciled conflict with whose land is purportedly being sold." (Ambler Br. at 22.)

The District, quoting the trial court, responds that "[p]aragraph 5 of the [p]etition describes the property by location, county parcel number" and indicates

---

[8] Of course, it is obvious that a public sale would also involve legal fees. We also note, as did the trial court, that the legal costs of this sale have been driven, at least in part, by the activity of the Amblers themselves in objecting to the sale.

[9] The trial court has exclusive province over matters involving the credibility of witnesses and evidentiary weight. *Chartiers Valley Indus. & Com. Dev. Auth. v. Allegheny Cnty.*, 963 A.2d 587 (Pa. Cmwlth. 2008). This Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result. *Id.*

8

that "[t]he Property includes a total of approximately ± 10.52 acres of land . . . ." [Dist. Br. at 23 (quoting Trial Ct. Op. at 24-25; Pet. ¶ 5, R.R. at 3a); *see also* N.T. Jan. 30, 2018 at 25, R.R. at 448a (cross-examination of Mr. Reichert confirming that the property consists of 10.52 acres).] Similarly, the agreement of sale, appended to the petition as an exhibit, also describes the property as containing 10.52 acres. (Pet., Ex. C, Agreement of Sale at 1, ¶ 1, R.R. at 14a.) The alleged .338-acre discrepancy is not internal to the petition, as suggested by the Amblers (Ambler Br. at 22), but relies upon the description of the land contained in the 1932 deed to the District's predecessor. While the metes and bounds listed in the legal description in the petition are clearly taken from the 1932 deed, the deed's area description of 10.182 acres is not included in the petition or exhibits—to the contrary, only the 10.52-acre figure is set forth. Furthermore, there is evidence that some parcel was added to the School grounds by a later conveyance, and substantial, competent evidence of record establishes that the amount of property to be conveyed is the 10.52 acres specified in the petition.

We believe that Section 707(3) is about effectively explaining the property to be sold to the trial court; the words "full and complete description" couch their meaning in *sufficiency* rather than *absolute precision*.[10] Here, as pointed out by the trial court, the petition itself identified the property at issue as containing "±

---

[10] "Full" means "containing as much or as many as is *possible or normal*," whereas "complete" means "having all *necessary* parts, elements, or steps." Definitions of "full" and "complete," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com, accessed Dec. 6, 2023 (emphasis supplied). In the law as it pertains to land, "description" means "[a] formal description of real property, including a description of any part subject to an easement or reservation, complete *enough* that a particular piece of land can be located and identified . . . ." Definitions of "description" (including definition No. 4, cross-referencing "legal description") and "legal description," *Black's Law Dictionary* (11th ed. 2019) (emphasis supplied).

10.52 acres," as did the attached agreement of sale. While the original 1932 deed to the District's predecessor is for 10.182 acres, the trial court accepted the 10.52 acre description in the petition, as confirmed by Mr. Reichert, as being "the entire property before the [trial] [c]ourt for evaluation." (Trial Ct. Op. at 25.) Furthermore, a tax map and aerial view of the property were appended to the petition as Exhibit B and were not challenged. (Pet., Ex. B, R.R. at 12a.) As the trial court was not in doubt as to the parcel being sold, despite the allegedly incomplete/inaccurate metes and bounds legal description appended,[11] we see no abuse of discretion or error.

Next, we reach the Amblers' one-sentence argument that a portion of the property is "completely mislocated," creating "irreconciled conflict with whose land is purportedly being sold." (Ambler Br. at 22.) The basis of this argument is a deed plot drawing submitted as an exhibit by the District but totally unexplained. (Ambler Br. at App. D; Dist. Ex. No. 1, R.R. at 142a.) The drawing shows the plot as depicted in other images in the record and a smaller, triangular lot to the northwest. While the plot drawing was submitted and moved into evidence by the District, the record is devoid of any testimony or other evidence explaining why it calls into question the description in the petition. Further, we cannot find where the Amblers raised this purported irreconciled conflict before the trial court, resulting in its waiver. *Magyar v. Zoning Hearing Bd. of Lewis Twp.*, 885 A.2d 123, 128 (Pa. Cmwlth. 2005) ("[b]y failing to raise [] issue before the trial court, [o]bjectors waived it"); Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Finally, even if the issue were not

---

[11] The Amblers make much of Mr. Reichert's testimony on cross-examination that the description in Exhibit A was not "full and complete." (N.T. Jan. 30, 2018 at 30, R.R. at 453a.) This reflected earlier cross-examination wherein he acknowledged that a parcel had been added to the Limekiln Simmons School in the 1950s, which increased its size. Whether the description was "full and complete" within the meaning of the statute is a legal determination, not a factual one.

10

waived, the Amblers have not developed this argument adequately, and we decline to speculate as to their meaning.[12]

### *Conflict of Interest*

Third and finally, the Amblers contend that because the husband of a member of the School Board, who abstained from the vote approving the private sale agreement, would allegedly earn commission fees if the transaction were completed, ethical concerns should prevent the execution of the contract. This issue, first raised by the Amblers at the July 29, 2022 hearing, bears no relationship to whether the District has met the requirements of Section 707(3) of the Code, which was the sole matter properly before the trial court. *Millcreek Twp. Sch. Dist.* Therefore, like the trial court, we decline to address it.

In light of the foregoing, we affirm.

 

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[12] The argument portion of a brief must be developed with pertinent discussion of the issues, including citations to relevant authority. Pa.R.A.P. 2119(a). When parties fail to satisfy this requirement, the Court is neither obliged, nor even particularly equipped, to develop an argument for them. *Skytop Meadow Cmty. Ass'n, Inc. v. Paige*, 177 A.3d 377, 385 (Pa. Cmwlth. 2017).

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

In re: Petition of the Board of School : 
Directors of the Hatboro-Horsham : 
School District for the Sale of Real : 
Property : 
                                      :    No. 1001 C.D. 2022
                                      :
Appeal of: Peggy Ambler and John : 
Ambler : 

# O R D E R

AND NOW, this 7th day of December, 2023, the order of the Court of Common Pleas of Montgomery County is AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita